# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0140

PAULINE PRICKETT, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued  June 15, 2006                    Decided   September 11, 2006   )

*Allan C. Hubbard*, of Washington, D.C.,  for the appellant.

*Gary O' Connor*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, HAGEL, and DAVIS, *Judges*.

DAVIS, *Judge*, filed the opinion of the Court.  HAGEL, *Judge*, filed a dissenting opinion.

DAVIS, *Judge*:  The appellant, Pauline Prickett, the surviving spouse of World War II veteran David E. Prickett, seeks, through counsel, review of a November 7, 2003, decision of the Board of Veterans' Appeals (Board) that denied her service-connection claim for the cause of her husband's death.  In addition to two secondary arguments on appeal, this case requires us to decide (1) whether VA complied with its 38 U.S.C. § 5103(a) notification requirements pursuant to the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, § 3(a), 114 Stat. 2096 (VCAA), despite its failure to provide notice before an initial rating decision, and (2) whether VA was required, pursuant to the principles of fair process or due process, to inform Mrs. Prickett of the decision review officer's (DRO's) request for VA medical opinions and to provide her with a copy of those opinions and an opportunity to challenge those opinions prior to the issuance of the DRO's determination.  For the reasons provided below, we affirm the Board's decision as to the service-

connection claim.

## I. BACKGROUND

World War II veteran David E. Prickett served on active duty in the U.S. Air Corps Ground Crew from December 1942 to October 1945. In November 1945, he was awarded service connection for psychosis at a 100% disability rating. That disability rating was eventually reduced to 10% in January 1950 after signs of marked improvement. In the early 1980s, Mr. Prickett was first diagnosed as having hypertension and potential coronary heart disease. In May 1982, a VA regional office (RO) denied him entitlement to service connection for his heart-related conditions on the grounds that there was no evidence in his service medical records of hypertension or heart disease and that there was no evidence establishing a nexus between his service-connected psychiatric condition and heart disease. The Board affirmed that determination in June 1984.

Mr. Prickett died in February 1991. His death certificate listed end-stage congestive cardiomyopathy due to arthriosclerotic cardiovascular disease as the cause of death. Diabetes mellitus was listed as a significant contributor to but not an underlying cause of death. Following the veteran's death, his widow, Pauline Prickett, filed a claim for dependency and indemnity compensation (DIC), asserting that her husband's death had been the result of his service-connected psychosis. In April 1991, the RO denied her entitlement to DIC on the grounds that "[t]here [was] no relationship between [the] veteran's service-connected [psychological] disability and the cause of his death. Neither did the service-connected disability hasten his demise." Record (R.) at 501. Mrs. Prickett did not appeal the decision, thereby rendering it final.

In February 2000, the RO denied Mrs. Prickett's attempt to reopen her previously denied service-connection claim for the cause of her husband's death on the grounds that she failed to submit new and material evidence. In May 2000, she filed a Notice of Disagreement (NOD). In May 2001, the RO sent Mrs. Prickett a letter, informing her of VA's duty to notify her of the information or evidence needed to grant the benefit she wanted and of VA's duty to assist her in obtaining that information or evidence (hereinafter the May 2001 notification letter, or notification letter). That same month, Mrs. Prickett received a letter from the RO informing her that additional VA medical center (VAMC) records had been requested and that a DRO decision would be issued

2

once such records were obtained. In June 2001, the RO informed Mrs. Prickett by letter that those requested VAMC records were no longer available and also informed her that she "may submit additional evidence or tell [VA] about evidence [it] may request in support of [her] claim." R. at 686. That letter was also sent to Mrs. Prickett's veterans service organization (VSO) representative.

In August 2001, the DRO issued a decision in the form of a Statement of the Case (SOC). Because the DRO determined that the evidence Mrs. Prickett submitted since her claim was initially denied was both new and material, the DRO reopened Mrs. Prickett's service-connection cause-of-death claim. However, based on the evidence available, the DRO determined that her claim should remain denied on the grounds that "there is no relationship shown between the veteran's military service, his service-connected psychotic disorder and his death." R. at 793.

In November 2001, the DRO held a hearing in which Mrs. Prickett participated. During the hearing, the DRO repeatedly informed Mrs. Prickett that medical evidence, in particular, a medical opinion demonstrating a nexus between the veteran's service and cause of death, was critical to the disposition of her claim and asked her to submit such evidence. However, Mrs. Prickett said that she currently had no such evidence to submit. Following the hearing, the DRO requested that a cardiologist and an endocrinologist or diabetes mellitus specialist review Mr. Prickett's claims file to determine whether a nexus relationship existed between the veteran's service and his cause of death. There is no evidence in the record that Mrs. Prickett or her representative was informed of this development or had the opportunity to review or comment on the specifics of the request. In January 2002, the RO received a copy of the results of the diabetes mellitus and cardiology examinations. The VA examiners opined that there was no evidence that either condition existed in service or was causally related to Mrs. Prickett's psychological condition.

In February 2002, the DRO issued a Supplemental SOC (SSOC), informing Mrs. Prickett of additional developments since the August 2001 SOC. The SSOC specifically mentioned the DRO's procurement of the January 2002 VA specialists' opinions. The cover letter attached to the SSOC informed her that the purpose of sending her this information was to give her the "opportunity to make any comment [she] wish[ed] concerning the additional information in the enclosed [SSOC]" before placing her records on the Board's docket. R. at 994. The SSOC and cover letter were also sent to her VSO representative. In June 2002, Mrs. Prickett's appeal was certified and transferred

3

to the Board. On June 5, 2002, she appeared personally before the Board to provide testimony concerning her appeal.

In October 2002, the Board affirmed the DRO's decision to deny Mrs. Prickett entitlement to service connection for the cause of her husband's death. However, that decision was set aside pursuant to a Court order granting the Secretary's request to remand to allow the Board to provide a statement of reasons or bases for why VA had complied with its VCAA duty-to-notify requirements. On remand, in June 2003, the Board sent a letter to Mrs. Prickett's representative notifying him of the opportunity "if desired, to submit additional argument and/or evidence in support of the appellant's appeal before the Board" within 90 days of the letter. R. at 1061. The record does not reflect that a copy of that letter was also sent to Mrs. Prickett. In its decision here on appeal, the Board again affirmed the DRO's determination. The Board concluded that "the evidence shows that the cardiovascular disorder and diabetes which resulted in the veteran's death were not present during service or manifested within one year of service," and that the evidence failed to establish a relationship between the veteran's psychiatric condition and the cause of his death. R. at 13.

## II. DISCUSSION

### A. 38 U.S.C. § 5103(a) Notification

#### *(i) Contentions on Appeal*

On appeal, Mrs. Prickett first argues that the Government erred in several respects with regard to VA's notification duties pursuant to 38 U.S.C. § 5103(a). She contends that the Board failed to make a conclusion in its statement of reasons or bases that VCAA notification documents alone complied with the VA's section 5103(a) notification requirements. Rather, she contends that the Board impermissibly relied on a combination of notification documents and decisional and postdecisional documents to conclude that section 5103(a) notice had been satisfied. For that reason, she argues that pursuant to *Mayfield v. Nicholson*, 444 F.3d 1328 (Fed. Cir. 2006), the Court is required to remand this matter for the Board to exercise its factfinding authority in the first instance.

Alternatively, she asserts that even if the Board sufficiently rendered a factual determination, the Court must remand this matter because VA failed to fulfill its underlying section 5103(a)

4

notification obligations.  She alleges error in the process by which VA attempted to cure its initial timing defect because VA failed to issue a second rating decision following the May 2001 notification letter.  She further contends that the generic notice letter she received was insufficient in its attempt to satisfy VA's section 5103(a) notification requirement.  To this end, she asserts that where notification is issued to cure a timing defect, specialized notification is required based on the record that exists at the time of issuance.[1]

In response, the Secretary contends that the Board's decision is clearly distinguishable from this Court's decision in *Mayfield* because here the Board rendered a factual determination that VA's section 5103(a) duty-to-notify requirements had been met through the May 2001 notification letter. He concedes that VA failed to provide VCAA notification prior to its initial determination on her claim.  However, he asserts that, through the issuance of the May 2001 notification letter and follow-up DRO decision issued in the August 2001 SOC, VA cured the timing defect.  In addition, the Secretary contends that the Court should reject the appellant's argument that specialized notification is required because VCAA notification cannot be assessed in categorical terms; rather, because notification is a factual issue, it must be determined on a case-by-case basis and the Court should defer to the Board's determination.

*(ii) Board's Findings Regarding Section 5103(a) Notification*

In *Mayfield*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that the Board's determination that section 5103(a) notification requirements could be met through a combination of unrelated decisional and postdecisional communications was an incorrect interpretation of the law.  *See Mayfield*, 444 F.3d at 1335.  The Federal Circuit emphasized that the plain meaning of section 5103 requires VCAA notification to be issued "prior to the initial decision of the claim, not afterwards."  *Id.* at 1333.  Moreover, by ignoring the deficiencies of the Board's discussion and concluding that the notification letter satisfied VA's section 5103(a) duty-to-notify requirements in the first instance, the Federal Circuit held that this Court's decision in *Mayfield*

_____

[1]  Because the appellant has not specifically asserted how the regulatory notice requirement under 38 C.F.R. § 3.159 (2005) was defective or how such error was ultimately prejudicial, the Court will not address these issues on appeal.  *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (requiring that the appellant identify, "with considerable specificity," how the notice was defective and, what evidence the appellant would have provided or requested the Secretary to obtain had the Secretary fulfilled his notice obligations).

violated the longstanding administrative law principle that a "court reviewing an agency decision generally may not sustain the agency's ruling on a ground different from that invoked by the agency." *Id.* at 1335 (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (establishing the doctrine that a reviewing court dealing with a determination or judgment that an administrative agency alone is authorized to make must judge the propriety of such action solely on the grounds invoked by the agency)).

At the outset of its notification discussion, the Board states that "the discussions in the rating decision, the [SOC], the [SSOC], and letters sent to the appellant informed her of the information and evidence needed to substantiate the claim and complied with VA's notification requirements." R. at 4. Mrs. Prickett asserts that this statement contravenes the Federal Circuit's holding in *Mayfield*, therefore requiring remand. The Court cannot agree with her narrow interpretation of the Board's statement. Reading the statement in the context of the Board's discussion as a whole, the Board's statement was not intended as a finding that through various pre- and postdecisional documents section 5103(a) notification had been met. Rather, the Board concluded generally that through pre- and postdecisional documents, all VA's notification requirements, not just section 5103(a) notice, had been satisfied.

More importantly, even assuming that the Court agreed with Mrs. Prickett's narrow interpretation, we cannot agree with her that remand is required pursuant to *Mayfield* and the *Chenery* doctrine. This is because reading the Board's notification discussion as a whole, the Court is satisfied that unlike the Board in *Mayfield*, the Board here rendered a factual determination that the May 2001 notification letter alone satisfied VA's section 5103(a) duty-to-notify requirements. In its decision, the Board dedicated nearly two pages of discussion to the May 2001 letter alone. Citing *Quartuccio v. Principi*, 16 Vet.App. 183 (2002), the Board stated that the May 2001 letter "provided the appellant with a specific explanation of the type of evidence necessary to substantiate her claim, as well as an explanation of what evidence the VA would attempt to obtain on his behalf." R. at 5. In support of that statement, the Board noted that the letter informed Mrs. Prickett of the enactment of the VCAA and VA's duties pursuant to that statute. The Board also noted that the letter informed Mrs. Prickett of the three evidentiary requisites necessary to substantiate her claim and, as to the nexus evidentiary requirement, the letter advised her that such relationship is usually

6

established through medical records or opinions that may be requested by VA or from her own doctor. Therefore, we conclude that the Board sufficiently exercised its factfinding authority and rendered a determination that the May 2001 notice letter alone satisfied VA's section 5103(a) duty-to-notify requirements.

### (iii) VA's Remedial Measures for Curing the Timing-of-Notification Defect

Before assessing the Board's factual determination that the May 2001 notification letter alone satisfied VA's section 5103(a) duty-to-notify requirements, the Court must first address Mrs. Prickett's argument that VA failed to properly cure the timing-of-notification defect by not issuing a second rating decision following the May 2001 letter. This is because, if Mrs. Prickett is correct that a second rating decision is required, the May 2001 notification letter would itself be a postdecisional document and unable to satisfy section 5103(a) notification requirements.

While recognizing that VCAA notification was intended to take place prior to, rather than following, the initial determination on a claim, the Federal Circuit in *Mayfield* also recognized that VA may cure timing defects through compliance with proper remedial measures. The Federal Circuit specifically mentioned two remedial measures: (1) The issuance of a fully compliant VCAA notification, followed by (2) readjudication of the claim. *See Mayfield*, 444 F.3d at 1333-34. *Mayfield*'s discussion of remedial measures for curing timing-of-notification defects is consistent with this Court's prior decisions. *See Dingess v. Nicholson*, 19 Vet.App. 473, 492 (2006) (holding that any defect in timing of notification cannot constitute prejudicial error if VA follows proper subsequent remedial processes to cure such defect, thereby providing the claimant a meaningful opportunity to participate in the processing of his or her claim); *see also Pelegrini v. Principi*, 18 Vet.App. 112, 122-24 (2004).

As to the second requirement–readjudication of the claim–Mrs. Prickett contends that a new rating decision issued by a VA regional office must be provided to comply with *Mayfield*. She contends that absent such a second rating decision, the May 2001 notification could not have afforded her VCAA-compliant notice because that document itself was postdecisional. We refuse to interpret the Federal Circuit's statement in *Mayfield* so narrowly as to require VA to start the claims process anew. VA's adjudicatory process includes established measures to ensure that a claimant does not have to go back to the beginning of the process when a defect in the process has

taken place or additional information or evidence has been presented. Specifically, the process relies on reviews and determinations made by the VA ROs, the DROs, and the Veterans Service Center managers (VSCM). *See generally* 38 C.F.R. § 3.2600 (2005) (authorizing de novo review by DROs and VSCMs). Such determinations must be made in compliance with the same applicable VA due process and notification requirements that are required of initial rating decisions. *See id.*; *see also* 38 C.F.R. § 3.103 (2005) (procedural due process and appellate rights). As long as a determination is made in compliance with those requirements, we see no need to draw a distinction as to whether an adjudicatory decision was issued in a rating decision or an SOC.[2]

Here, the August 2001 SOC clearly indicates that Mrs. Prickett's service-connection claim for the cause of her husband's death had been properly readjudicated following VA's attempts to cure a timing-of-notice defect. The August 2001 SOC informed Mrs. Prickett that after a review of the evidence received before and after the May 2001 notification letter, her service-connection-cause-of death claim remained denied. The SOC also provided a statement of reasons or bases for that denial, in particular, noting the lack of evidence demonstrating a nexus between the veteran's service and his cause of death. Accordingly, the August 2001 SOC complied with all applicable due process and notification requirements.

Mrs. Prickett contends that allowing VA to notify her of readjudication in the form of an SOC takes away her bite at the apple of additional RO review. This argument, however, ignores the fact that the VA adjudicatory system is designed to afford both the claimant and the Government every opportunity to resolve a disagreement between the parties before resorting to a Substantive Appeal and Board adjudication. If there remains a disagreement following the issuance of an SOC, VA is still required pursuant to 38 U.S.C. § 7105, to "take such development or review action as it deems proper" to resolve that disagreement. 38 U.S.C. § 7105(d). Any decision resulting from such development or review action is issued in an SSOC pursuant to 38 C.F.R. § 19.31, which is designed to "inform the appellant of any material changes in, or additions to, the information included in the [SOC] or to any prior [SSOC]." 38 C.F.R. § 19.31(a) (2005). Only when it is clear that the

---

[2] Although not at issue in this case, the Court agrees with the Secretary's comments during oral argument that a Board determination may not constitute proper "readjudication" following the issuance of a followup section 5103(a) notification. However, we note that failure to submit additional evidence following proper notification may constitute a waiver of readjudication or render the error harmless.

disagreement cannot be resolved at the RO level must the matter be adjudicated by the Board. Here, through personal testimony, additional evidentiary development, and a subsequent review action in the form of a February 2002 SSOC, the DRO made every attempt to resolve Mrs. Prickett's dispute before the matter was transferred to the Board.

In addition, requiring a claimant to start his or her claim from scratch would ultimately hurt veterans and their families. Such a requirement would increase the chances that a veteran or his or her surviving spouse would fail to file a second NOD, thereby preventing appellate relief. It would also require the claimant and Government to start the claims review process from scratch, which would likely increase the workload at the lower adjudicatory level, increasing the time it takes to process each and every claim and appeal. Based on the foregoing reasons, we conclude that VA did not err by issuing a readjudicated decision in the August 2001 SOC.

### (iv) Court's Review of the Board's Section 5103(a) Notification Findings

#### (a) Standard of Review

Having concluded that VA properly cured the timing-of-notice defect and that the Board rendered a determination that the May 2001 notification letter alone satisfied VA's section 5103(a) duty-to-notify requirements, the Court must review the Board's determination pursuant to the appropriate standard of review. In *Mayfield*, the Federal Circuit noted that the adequacy of notice must be assessed in accordance with "the particular information provided to [the claimant] in light of the circumstances of [his or] her claim" that ultimately "turns on what inferences [VA] draws from the facts before it." *Mayfield*, 444 F.3d at 1335. Thus, whether VA communications satisfy the statutory and regulatory notification requirements is a "substantially factual determination" which must be made by VA in the first instance. *Id.*

The Court reviews factual determinations under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4). As this Court noted in *Flores v. Nicholson*, 19 Vet.App. 516 (2005), "[a] plain reading of section 7261 makes clear that Congress did not make exceptions or purport to exclude certain categories of factual findings from the 'clearly erroneous' standard of review," even for so-called "ultimate facts." *Flores*, 19 Vet.App. at 522; *see also Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982) (noting that Rule 52(a) of the Federal Rules of Civil Procedure "does not divide facts into categories; in particular it does not divide findings of fact into those that deal with

9

'ultimate' and those that deal with 'subsidiary' facts."). As the Federal Circuit's opinion in *Mayfield* made clear, a determination of whether section 5103(a) notification has been met through predecisional communications "turns on what inferences the agency draws from the facts before it," and therefore, such determinations are squarely within the province of VA. *See Mayfield,* 444 F.3d at 1335; *see also Miller v. Fenton,* 474 U.S. 104, 113-14 (1985). Accordingly, the Court reviews the Board's determination that a notification communication satisfies VA's section 5103(a) duty-to-notify requirements under the "clearly erroneous" standard of review.

Under the "clearly erroneous" standard of review, the Court may only set aside a finding of material fact when, after reviewing the record as a whole, it is "left with the definite and firm conviction that a mistake has been committed." *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1991) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When applying this standard, "'[i]f the [Board's] account of the evidence is plausible in light of the record viewed in its entirety, the [Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). Moreover, the Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-7.

(b) Application of Law to Fact[3]

Reviewing the record in its entirety, we find that the Board's conclusion that the May 2001 notification letter satisfied VA's statutory notification requirements pursuant to 38 U.S.C. § 5103(a) is not clearly erroneous and is supported by an adequate statement of reasons or bases. As to the first notice element, the Board noted that the letter informed Mrs. Prickett of the three evidentiary requisites needed to establish her service-connection claim, including the need for evidence of the following: (1) "The cause of death"; (2) "[a]n injury, disease, or other event in service"; and (3) "[a]

---

[3] As noted in footnote 1, the appellant has waived any argument pertaining to the regulatory or fourth element notice requirement.

relationship between the cause of death and the injury, disease, or other event in service."[4] R. at 674. The Board further concluded that the letter provided Mrs. Prickett information as to what types of evidence would be needed to substantiate each of these elements. In particular, the Board noted that the letter advised her that a medical opinion or medical records were the most pertinent evidence with regard to the nexus requisite and that the letter informed her that if appropriate, VA would request a medical opinion from a VA medical examiner or she could submit a private medical opinion from her own doctor. Although the Court sitting as trier of fact in the first instance may have weighed the circumstances of the case to require more specific or specialized notice with regard to nexus, we cannot say that the Board's conclusions were clearly erroneous. Reviewing the record in its entirety, the May 2001 notification letter provides the Board with a plausible basis for its conclusions that Mrs. Prickett was notified of the evidence or information necessary to substantiate her claim based on the evidence and information that existed at the time.

Moreover, reviewing the record in its entirety, the Board's conclusions that the May 2001 notification letter informed Mrs. Prickett about who would be responsible for providing or seeking to obtain which information and evidence are not clearly erroneous and supported by an adequate statement of reasons or bases. As the Board noted, the notice letter advised her that VA was responsible for obtaining her deceased husband's VA medical records and that ultimately, she was responsible for obtaining any private medical records. The Board further noted that the letter stated that VA would obtain a medical opinion if appropriate or that she could provide one of her own. Given this information in the May 2001 letter, the Board had a plausible basis in the record to conclude that the appellant was told who would be responsible for providing or seeking to obtain which information and evidence. Accordingly, the Court cannot agree with Mrs. Prickett's contentions that the Board's conclusions as to VA's duty-to-notify requirements pursuant to 38 U.S.C. § 5103(a) were clearly erroneous.

---

[4] Although the letter failed to inform Mrs. Prickett of what constituted new and material evidence, the fact that VA reopened her claim rendered such error harmless.

11

## B. Fair Process and Due Process

### (i) Mrs. Prickett's Thurber/Austin Arguments

Mrs. Prickett's second set of arguments alleges various VA actions violated the principles of fair process. In support of her allegations, she cites to a line of this Court's decisions beginning with *Thurber v. Brown*, 5 Vet.App. 119 (1993). *Thurber* held that, before the Board relies on any evidence developed or obtained subsequent to the issuance of the most recent SOC or SSOC with respect to such claim, the Board must "provide a claimant with reasonable notice of such evidence . . . and a reasonable opportunity for the claimant to respond to it." *Thurber*, 5 Vet.App. at 126. The Court premised its holding in *Thurber*, in part, upon considerations of what it labeled "principles of fair process." Citing generally *Gonzales v. United States*, 348 U.S. 407 (1955), a U.S. Supreme Court criminal law decision, the Court in *Thurber* noted that where an applicable statute or regulation is silent as to whether a particular procedural process is required, such process may be implicitly required when "viewed against [the] underlying concepts of procedural regularity and basic fair play" of the VA benefits adjudicatory system. *Thurber,* 5 Vet.App. at 123 (quoting *Gonzales*, 348 U.S. at 412).

A year later*,* in *Austin v. Brown*, 6 Vet.App. 547 (1994), the Court clarified and expanded upon *Thurber*'s holding. In *Austin*, the Board's written request for an additional medical opinion contained the acting Board member's own opinion that there was no relationship between the claimant's service and his current condition. In addition, although the Board complied with *Thurber*'s requirement of sending the claimant the medical opinion, the letter accompanying the opinion informed the claimant's representative that he could submit additional argument or comment, but failed to inform him that he could submit additional evidence. Applying *Thurber*, the Court held that the Board's procurement of the medical opinion violated the principles of fair process because it failed to do so in "an impartial, unbiased, and neutral manner." *Austin*, 6 Vet.App. at 552. The Court also held that the Board violated *Thurber* by failing to expressly inform the claimant that he could also submit additional evidence and information rebutting the procured medical opinion.

Citing *Thurber* and *Austin* as authority, Mrs. Prickett asserts three specific violations of the principles of fair process by the DRO's review. First, she contends that the DRO violated fair process by failing to notify her that the DRO was procuring two VA medical examinations of her

deceased husband's claims file. Second, she contends that the DRO violated fair process by failing to provide her with a copy of those medical opinions before issuing a decision, thereby precluding her from having a meaningful opportunity to respond to and challenge those medical opinions. Third, she contends that the DRO procured those medical opinions in a biased and impartial manner without allowing her to verify, comment on, and contribute to the request.

(ii) Thurber/Austin *Fair Process and Mrs. Prickett's First and Second Contentions*

With regard to Mrs. Prickett's first and second contentions–the DRO's procurement of VA medical opinions without her consent and the DRO's failure to provide her with a copy of those opinions and a meaningful opportunity to respond–we agree with the Secretary that this Court has consistently limited a *Thurber/Austin* duty-to-act to situations in which evidence was procured *by the Board following the issuance of the most recent SOC or SSOC. See, e.g., Anderson v. West*, 12 Vet.App. 491, 497 (1999) (noting that the claimant's *Thurber* argument was unavailing because unlike in *Thurber* the medical opinion in *Anderson* was procured prior to the issuance of the most recent SOC or SSOC); *Velez v. West*, 11 Vet.App. 148, 155 (1998) (holding that a *Thurber* error was not implicated where it was the regional office, not the Board, that failed to inform the claimant that he could respond to a VA medical opinion or submit evidence rebutting that opinion); *see id*. at 156 ("[An] *Austin* right to submit additional evidence arises in a situation where the Board develops new evidence after the issuance of the most recent SOC or SSOC, a situation not presented here.").

We further agree with the Secretary that we should decline Mrs. Prickett's request to overrule any case that limits a *Thurber/Austin* duty-to-act requirement to the Board. We are fully satisfied that the pre-Board adjudicatory process in this case was fair, and Mrs. Prickett, who was represented by counsel, was provided every opportunity to review the opinions in question and submit rebuttal information and evidence. First, it is undisputed that the DRO acted properly in requesting the medical opinions as such evidence was necessary to properly develop Mrs. Prickett's claim. Second, the February 2002 SSOC, which was mailed to Mrs. Prickett and her representative, informed her that additional evidence had been obtained, including a detailed account of the two January 2002 medical opinions. The cover letter accompanying the SSOC specifically informed her that the purpose of sending her this information was to give her the "opportunity to make any comment [she] wish[ed] concerning the additional information in the enclosed [SSOC]" before placing her records

13

on the Board's docket. R. at 994. Third, Mrs. Prickett and her representative failed to make a written application for a copy of those medical opinions, which would have been provided pursuant to VA statutes and regulations upon request. *See* 38 U.S.C. §§ 5701(a), (b)(1), 5702(a)(1); *Anderson*, 12 Vet.App. at 494-95; 38 C.F.R. §§ 1.501(b)(1), 1.526(a) (2005). Finally, Mrs. Prickett's representative actively participated in the June 2002 Board hearing, in which the need for medical evidence, in particular medical nexus opinions, was repeatedly discussed. Such process was fair to Mrs. Prickett, and therefore, we reject her first and second assertions of fair process error.

### *(iii)* Thurber/Austin *Fair Process and Mrs. Prickett's Third Contention*

As to Mrs. Prickett's third argument–the DRO procured the medical opinions in a biased and impartial manner–we find no merit in her contention that the DRO's request for procuring medical opinions violated the principles of fair process. Assuming that at all stages of development of a claim that VA must procure evidence in an unbiased and neutral manner, we cannot say, based on our review of the DRO's November 2001 letter, that the medical opinions were requested unfairly. *Austin* does not stand for the principle that all requests for a VA medical opinion must be submitted to a claimant for approval and comment. Rather, *Austin* simply holds that those requests must be conducted in a neutral manner to ensure that the medical examiner's opinion is not unfairly influenced. Here, the DRO's letter was a neutral request for medical opinions as to nexus in full compliance with *Austin*. Accordingly, we reject Mrs. Prickett's third contention, of fair process error.

### *(iv) Constitutional Due Process*

We also reject any argument that the DRO's actions or omissions violated the due process clause of the U.S. Constitution. As this Court has previously noted, creating a procedural right in the name of fair process principles is primarily based on the underlying concepts of the VA adjudicatory scheme, not the U.S. Constitution. *See Anderson*, 12 Vet.App. at 497 (noting that the holding in *Thurber* "was based on principles of fair process and basic fair play that the Court extracted from a variety of sources, including the U.S. Constitution, but *Thurber* did not rely upon a constitutional basis for its holding as to the procedural protections owed to VA claimants"); *see also Austin*, 6 Vet.App. at 551-52 (discussing principles of "fair process" not grounded in the U.S. Constitution).

With regard to the requirements of the due process clause of the Constitution, the pertinent inquiry is whether the totality of the situation provides claimants with "adequate notice of judicial disposition of their claim and an adequate opportunity to challenge an adverse ruling." *E. Paralyzed Veterans Assoc., Inc. v. Principi*, 257 F.3d 1352, 1358-59 (Fed. Cir. 2001); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-46 (1984) ("The essential requirements of due process . . . are notice and an opportunity to respond."). Here, at every stage of the development and processing of her claim (e.g., VCAA notification, rating decisions, SOCs, SSOCs, personal testimony before Board, and Board decision), Mrs. Prickett was provided notice and a meaningful opportunity to develop her claim and challenge VA's determination. Therefore, we reject Mrs. Prickett's arguments as to her due process assertion.

## C. Appellant's Other Contentions

### (i) VA's 38 C.F.R. § 3.103(c)(2) (2005) Obligations

Mrs. Prickett contends that the Board hearing officer failed to fulfill his obligations pursuant to 38 C.F.R. § 3.103(c)(2). This Court has held that a VA hearing officer has a regulatory obligation under § 3.103(c)(2) to explain fully the issues and inform a claimant of evidence he or she "may have overlooked and which would be of advantage to the claimant's position." *Douglas v. Derwinski*, 2 Vet.App. 435, 441-42 (1992) (en banc). Here, during the June 5, 2002, Board hearing, the hearing officer informed Mrs. Prickett that "the most probative information" with regard to determining her claim were "statements from medical types." R. at 1031. In addition, regarding the issue of nexus, the hearing officer informed Mrs. Prickett that "[she] need[ed] to have medical evidence that says–that expresses an opinion, an informed opinion that [the veteran's] death was caused or contributed to by a service-connected disability." R. at 1031. Moreover, the Board officer repeatedly informed Mrs. Prickett that she should submit any evidence that she had in her possession, particularly medical evidence in support of her claim. Based on these statements, the Court finds that the hearing officer acted in accordance with his obligations under § 3.103(c)(2).

### (ii) VA's 38 C.F.R. §§ 19.36 and 20.1304 (2005) Obligations

Mrs. Prickett also contends that the Board violated its obligations pursuant to 38 C.F.R. §§ 19.36 and 20.1304 (2005) by failing to provide her a "90-day" notice-of-certification letter. Together, those regulations require that after an appeal is certified to the Board, written notice be sent to appellant, and any representative, informing them of the certification and transfer of the

15

appellate record to the Board. Such notice also serves to advise the appellant, and any representative, that the appellant has 90 days from the date of that letter in which to request a change in representation, request a personal hearing, and submit additional evidence. Here, Mrs. Prickett contends that VA failed to fulfill its § 19.36 obligations because the "90-day" letter was sent only to her representative. The record designated by the parties reflects that a copy of that letter was sent to Mrs. Prickett's representative but contains no evidence regarding whether Mrs. Prickett was sent separate notice. In any event, the Secretary, who has access to the entire claims file, concedes that "[i]t appears that a copy of the '90-day' letter was sent to [a]ppellant's representative but not to appellant." Secretary's Brief (Br.) at 26. The Court accepts this statement as an admission that VA erred by failing to comply with § 19.36.

Upon finding error, the Court, pursuant to 38 U.S.C. § 7261(b)(2), must take due account of the rule of prejudicial error. To begin with, because Mrs. Prickett's appeal was before the Board on remand from the Court and not on appeal from the RO, it is questionable whether §§ 19.36 and 20.1304 apply in this case. In any event, Mrs. Prickett argues that VA's error regarding § 19.36 warrants vacatur of the Board decision and remand of her claim only because the Board "failed to consider whether [her] failure to submit evidence or argument was tied to her failure to receive the required notice." Appellant's Br. at 23. We do not agree. [5]

In this case, as the Secretary asserts, when her claim was remanded by the Court in January 2003, Mrs. Prickett, who was unrepresented, was informed directly that on remand she could submit additional evidence and argument. *See* R. at 1055. In fact, in his motion for remand, the Secretary cited § 20.1304 directly after the sentence informing Mrs. Prickett of her right to submit additional evidence and argument. *Id.* Thus, she had already been notified of her right to submit additional evidence and argument before the Board rendered another decision on her claim. Despite that notification, she failed to submit any additional evidence or argument. Therefore, assuming that VA erred in notifying only Mrs. Prickett's representative and not the claimant herself of the ability to submit additional evidence, the Court finds that such error was nonprejudicial.

---

[5] Although Mrs. Prickett contends that the Board did not consider whether she failed to submit additional evidence because of the notice error, she raises no argument regarding the effect of the notice error on her ability to request a change in representation or a Board hearing. *See* Appellant's Br. at 23; *see also* 38 C.F.R. § 20.1304(a).

## III. CONCLUSION

On consideration of the foregoing, the November 7, 2003, Board decision is AFFIRMED.


HAGEL, *Judge*, concurring in part and dissenting in part: I concur in the opinion of the Court except as to Part A, which addresses Mrs. Prickett's arguments regarding the Board's discussion of the Secretary's duty to notify pursuant to 38 U.S.C. § 5103(a), as amended by the Veterans Claims Assistance Act of 2000. As I will explain below, the recent decision of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Mayfield v. Nicholson*, 444 F.3d. 1328 (Fed. Cir. 2006), compels vacatur of the November 2003 Board decision on appeal and remand of this matter.

In *Mayfield*, the Federal Circuit held that VA's duty to notify "is not satisfied by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation." *Mayfield*, 444 F.3d at 1333. In support of that holding, the Federal Circuit reasoned that notice under the Veterans Claims Assistance Act

> is required to have different contents from the post-decisional notices, and it is designed for different purposes–to ensure that the claimant's case is presented to the initial decisionmaker with whatever support is available and to ensure that the claimant understands what evidence will be obtained by the VA and what evidence must be provided by the claimant.

*Id*.

Here, in determining that the notice provided to Mrs. Prickett was adequate, the Board relied impermissibly, at least in part, on documents that were neither issued prior to the initial adjudication of her claim by the agency of original jurisdiction nor for the purpose of compliance with the Veterans Claims Assistance Act. Indeed, the Board conceded as much, concluding that "discussions in the rating decision, the [S]tatement of the [C]ase . . . , the [S]upplemental [S]tatement of the [C]ase . . . , and letters to the appellant informed her of the information and evidence needed to substantiate the claim and complied with the VA's notification requirements." R. at 4. The next sentence of its decision, in which the Board began explaining its conclusion that the Secretary had complied with the duty to notify, begins as follows: "The ***communications***, such as a letter from the [regional office] dated in May 2001, provided the appellant with a specific explanation of the type of evidence necessary to substantiate her claim, as well as an explanation of what evidence was to

17

be provided by her and what evidence the VA would attempt to obtain on h[er] behalf." R. at 4-5 (emphasis added). The Board went on to discuss the May 2001 letter, a June 2003 letter, the August 2001 Statement of the Case, and the February 2002 Supplemental Statement of the Case, before concluding that "[b]ased on the foregoing, the Board finds that the VA has fully satisfied the duty to inform the appellant." R. at 5. Hence, the Board made it abundantly clear that it was relying on more than just the May 2001 letter to find that the Secretary had properly discharged his duty to notify.

In concluding to the contrary, the majority determines that the Board's statement that it was relying on a combination of pre- and postdecisional documents to find compliance with the duty to notify "was not intended as a finding that through various pre- and postdecisional documents section 5103(a) notification had been met." *Ante* at 6. Instead, the majority finds the Board's statement to generally conclude that "through pre- and postdecisional documents, all VA's notification requirements, not just section 5103(a) notice, had been satisfied." *Id.* The majority goes on to declare that the "Board here rendered a factual determination that the May 2001 notification letter alone satisfied VA's section 5103(a) duty-to-notify requirements." *Id.*

I do not agree and, as I noted above, believe that the language referred to in the Board decision reflects that, in finding that the Secretary had properly discharged his duty to notify, the Board relied on post-decisional documents not designed to have complied with section 5103(a). *See* R. at 4-5. By concluding otherwise, the majority is rewriting the Board decision in order to eliminate the Board's *Mayfield* error. That said, I would not necessarily view the Board's mere reference to noncomplying documents as fatal in every case. Indeed, had the Board articulated clearly that it was relying solely on the May 2001 letter to find compliance with the section 5103(a) notice requirements, I would agree with the majority that the Board's decision as to notice was not clearly erroneous.

In sum, in cases such as Mrs. Prickett's, where the Board relies on multiple documents–some of which are postdecisional or are not designed to provide the statutorily required notice–to find compliance with the duty to notify, as the Federal Circuit counseled in *Mayfield*, the proper recourse

is to vacate the Board decision and remand the matter for readjudication on the duty-to-notify issue.[6]

---

[6] That is, assuming that the notice error is prejudicial, which I believe it is in this case and most others. My belief stems from the premise that we are not in a position to speculate regarding what the Board on remand would conclude concerning the adequacy of the notice in the absence of documents that violate *Mayfield*. *See* 38 U.S.C. § 7261(b)(2); *Daniels v. Brown*, 9 Vet.App. 348, 353 (1996). Moreover, the Federal Circuit has informed us that whether a claimant has received adequate notice "is an issue that should be addressed by the agency in the first instance, under the proper legal standard." *Mayfield*, 444 F.3d at 1335. It would therefore be improper for the Court to consider in the first instance whether any remaining documents, standing alone, are sufficient to satisfy VA's duty.