Citation Nr: 1045636 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 06-11 084 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, 
Pennsylvania

THE ISSUE

Entitlement to service connection for a dental disability for VA 
compensation purposes.

Entitlement to service connection for a dental disability for VA 
treatment purposes. 

REPRESENTATION

Appellant represented by: Pennsylvania Department of 
Military and Veterans Affairs

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

Dan Brook, Counsel

INTRODUCTION

The Veteran served on active duty from January 1984 to March 1984 
and from March 2002 to August 2002. 

This appeal to the Board of Veterans' Appeals (Board) arises from 
a rating decision by the Pittsburgh Regional Office (RO) of the 
Department of Veterans Affairs (VA). 

In September 2010 the Veteran testified during a Board hearing at 
the RO before the undersigned Veterans Law Judge; a transcript of 
that hearing is of record.

FINDINGS OF FACT

1. The Veteran is reasonably shown to have a dental disability 
of tooth number 6 analogous to a dental abscess.

2. The dental disability to tooth number 6 is reasonably shown 
to have resulted from dental trauma in service due to a fall. 

3. Missing teeth in the absence of involvement of the bones of 
the jaw are not disabilities for which VA compensation is paid.

CONCLUSIONS OF LAW

1. The criteria for service connection for dental disability for 
compensation purposes are not met. 38 U.S.C.A. §§ 1110, 1712 
(West 2002); 38 C.F.R. §§ 3.381, 4.150 (2010).

2. With resolution of reasonable doubt in the appellant's favor, 
the criteria for service connection for dental disability to 
tooth number 6 and any associated teeth as medically indicated, 
for VA dental treatment purposes have been met. 38 U.S.C.A. §§ 
1110, 1712 (West 2002); 38 C.F.R. §§ 3.381, 4.150, 17.161 (2010).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 
106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. 
§§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & 
Supp. 2009)) includes enhanced duties to notify and assist 
claimants for VA benefits. VA regulations implementing the VCAA 
were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 
and 3.326(a) (2009).

Notice requirements under the VCAA essentially require VA to 
notify a claimant of any evidence that is necessary to 
substantiate the claims, as well as the evidence that VA will 
attempt to obtain and which evidence he or she is responsible for 
providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 
(2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) 
and 38 C.F.R. § 3.159(b)). As delineated in Pelegrini v. 
Principi, 18 Vet. App. 112 (2004), after a substantially complete 
application for benefits is received, proper VCAA notice must 
inform the claimant of any information and evidence not of record 
(1) that is necessary to substantiate the claim; (2) that VA will 
seek to provide; and (3) that the claimant is expected to 
provide.

VA's notice requirements apply to all five elements of a service 
connection claim: veteran status, existence of a disability, a 
connection between a veteran's service and the disability, degree 
of disability, and effective date of the disability. 
Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

VCAA-compliant notice must be provided to a claimant before the 
initial unfavorable decision on a claim for VA benefits by the 
agency of original jurisdiction (in this case, the RO). Id.; 
Pelegrini, 18 Vet. App. at 112. See also Disabled American 
Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. 
Cir. 2003). However, the VCAA notice requirements may, 
nonetheless, be satisfied if any errors in the timing or content 
of such notice are not prejudicial to the claimant. Id.

In this appeal, in a September 2004 pre-rating letter, the RO 
provided notice to the Veteran regarding what information and 
evidence was needed to substantiate a claim for service 
connection, as well as what information and evidence must be 
submitted by the appellant, and what information and evidence 
would be obtained by VA. The November 2004 RO rating decision 
reflects the initial adjudication of the claim after issuance of 
the September 2004 letter. 

Post rating, a March 2006 letter provided the Veteran with 
information pertaining to the assignment of disability ratings 
and effective dates, as well as the type of evidence that impacts 
those determinations, consistent with Dingess/Hartman. After 
issuance of the March 2006 letter, and the opportunity for the 
Veteran to respond, a July 2009 supplemental statement of the 
case reflects readjudication of the claim. Hence, the Veteran is 
not shown to be prejudiced by the timing of this latter notice. 
See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also 
Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance 
of a fully compliant VCAA notification followed by readjudication 
of the claim, such as in an SOC or SSOC, is sufficient to cure a 
timing defect).

The Board notes that the Veteran was not informed of the specific 
provisions pertaining to obtaining compensation for dental 
disability in a VCAA notice letter. However, the March 2006 
statement of the case did provide notice of these provisions. 
Additionally, the Veteran and his representative have both 
essentially argued that the Veteran was exposed to dental trauma 
during service, showing a general understanding of what is 
necessary to establish the Veteran's claim for service connected 
compensation. Accordingly, the Board finds that any error in the 
content of the VCAA notice provided was "cured by actual 
knowledge on the part of the claimant." See Dalton v. Nicholson, 
21 Vet. App. 23, 30-31 (2007). 

Additionally, in regard to the Veteran's claim for dental 
treatment, given the favorable outcome detailed below, an 
assessment of VA's duties under the VCAA is not necessary.

The record also reflects that VA has made reasonable efforts to 
obtain or to assist in obtaining all relevant records pertinent 
to the matters herein decided. Pertinent medical evidence 
associated with the claims file consists of a portion of the 
service treatment records, private treatment records and VA 
treatment records. Also of record and considered in connection 
with the appeal is the transcript of the September 2010 Board 
hearing, along with various written statements provided by the 
Veteran and by his representative on his behalf. 

The Board notes that some of the Veteran's service treatment 
records have not been obtained. In this regard, in a June 2009 
memorandum, the RO documented that they attempted to obtain the 
additional records from the Records Management Center, from the 
Veteran, from the Veteran's unit, the 171st Air Refueling Wing, 
and from the National Personnel Records Center. Unfortunately, 
they received negative responses from all these sources. 
Additionally, an exhaustive search was made of the RO but no 
additional service treatment records were uncovered. As the 
evidence of record does not suggest another source for obtaining 
the additional service treatment records, the Board finds that 
the RO has met its duty to assist in attempting to obtain these 
records. 

The Board also notes that during the September 2010 Board 
hearing, the Veteran reported that he had been seen by a dentist 
at the Highland Drive VA Medical Center in October 2004 and had 
also subsequently been seen by a private dentist. Records from 
these sources do not appear to be contained in the claims file. 
However, the Board finds that a remand to attempt to obtain 
records from these sources is not necessary. As, it is already 
clear from the record and from the Veteran's own allegations that 
the Veteran's dental injury in service was limited to replaceable 
and/or abscessed teeth, documentation from these sources would 
not form a basis for granting service connected compensation for 
the Veteran's dental disability (see discussion of compensation 
below). Additionally, the Board is also granting service 
connection for treatment purposes for the tooth the Veteran 
alleges was injured in service (i.e. tooth six) so attempting to 
obtain the additional records in conjunction with his claim for 
treatment is also unnecessary. See Soyini v. Derwinski, 1 Vet. 
App. 540, 546 (1991) (A remand, which would impose unnecessary 
additional burdens on adjudication resources, with no benefit 
flowing to the Veteran is unnecessary). 

In summary, the Board finds that there is no additional notice 
that should be provided, nor is there any indication that there 
is additional, available evidence to obtain or development 
required to create any additional evidence to be considered in 
connection with the claim. Consequently, VA's duties to notify 
and assist have been met and the Veteran is not prejudiced by the 
Board proceeding with appellate review. 

II. Factual Background

The limited service treatment records available include a couple 
of April 2002 progress notes showing that the Veteran suffered 
dental problems while serving in Bahrain. An April 16, 2002 
progress note shows that the Veteran complained that he had lost 
a filling one month prior. It was noted that he was not 
currently having any pain or problems and a dental referral was 
made. A subsequent April 19, 2002 dental progress note indicates 
that the Veteran was having severe pain in a dental bridge in a 
different area of his mouth. The diagnosis was dental pain and 
it was noted that there was no dental treatment on site. 
Accordingly, the Veteran was referred to the Naval Support 
Activity (NSA) in Bahrain for treatment. 

A June 2003 progress note shows that the Veteran received an 
apicoectomy of tooth number 6. After the operation the Veteran 
reported swelling into his eye and tenderness in the area around 
where the apicoectomy was performed. The treating dentist found 
that the tissues were healing well with no signs of infection. 

VA treatment records show that the Veteran received a dental 
consultation in May 2004. The Veteran reported that during the 
Persian Gulf War he fell while in the Bahrain/Kuwaiti area, 
resulting in injury to tooth six and the loss of tooth 7. He 
reported some discomfort with his maxillary right canine tooth. 
It was noted that he had recently had an apicoectomy done for 
tooth 6. The Veteran was afraid that because there was some scar 
tissue above the tooth and the tissue was a little raised or not 
smooth, that there was still an infection there. However, 
examination did not show any infection or pain. A periapical X-
ray image was made and it showed that an existing lesion was in 
the process of healing. It was explained that the healing could 
take six months to a year to reach completion with a bone fill 
in. The consultative examiner found that no treatment was 
indicated. 

The examiner noted that there was little gum recession at the 
facial cervical area of tooth 6. It was not visible, not seen 
and would only be an elective periodontal procedure to repair if 
it ever concerned the Veteran. The Veteran had a complex fixed 
bridge, with four units of prosthetic crowns attached in one 
piece, involving the replaced tooth #7, #6, missing tooth #5, 
(by-passing a closed space where #4 would be) and finally 
anchored on the abutment tooth #3, first molar. The Veteran did 
not really have any pain and the examiner found that the Veteran 
should be patient and allow the apical area of tooth 6 to heal. 

In his August 2004 claim the Veteran indicated that during 
service, he was working on fuel bladders in a dike area. While 
he was walking up the steps from the dikes he slipped and fell, 
injuring his mouth and teeth. He reported the accident to the 
senior NCO and then went to the clinic. An appointment was then 
made for him to see a dentist at NSA Bahrain. 
 
In a June 2005 statement, a fellow serviceman of the Veteran 
indicated that during March 2002, 12 members of the Air National 
Guard's 171st Air Refueling Wing were activated and mobilized in 
support of Operation Enduring Freedom, including himself and the 
Veteran. The serviceman noted that he and the veteran were sent 
to a remote location on the island of Bahrain to serve as support 
for air operations. The serviceman noted that on the night of 
April 18, 2002, he was the night shift fuel operations 
supervisor. One of his initial duties on shift was to assign a 
crew to inventory all usable JP-8 jet fuel available in their 
storage areas. Once this was completed he determined that the 
inventory was low. He then assigned the Veteran to begin the 
transfer of fuel. While the Veteran was gauging tank capacities, 
part of a plank connecting one tank area to another gave way 
causing him to fall. The ground that he fell on was not dirt or 
sand but part of a dike retainment area made of large rocks and 
boulders. The serviceman noted that the Veteran suffered damage 
to his hands, arms, face and jaw. He finished his shift and then 
went immediately to the clinic for treatment. His jaw and teeth 
injuries were beyond the means of the remote clinic so he was 
referred to the Bahrain Naval Station. The fellow serviceman 
noted that he could see that after treatment, the Veteran was in 
pain and had to return for further treatment due to complications 
from infection. 

In a June 2005 statement, the Veteran indicated that he felt that 
due to the lack of sanitary conditions in Bahrain he acquired an 
infection to the right upper teeth and gum area, which resulted 
in the surgery to scrape the gum and clear-up infection. He also 
noted that he had had two additional surgical treatments in 2003 
and 2004 and that he was going to need dental implants to resolve 
the problem. 

During the September 2010 Board hearing, the Veteran testified 
that on April 18, 2002, he was working the night shift and had to 
make sure the fuel gliders were even and the right fuel was going 
to the correct glider for the next shift coming up. He was 
walking on one of the boards that had been placed over the rocks 
in the fuel glider area to allow the men to move around the area. 
One of the boards apparently gave out and he fell on his shoulder 
and arm. He bit down pretty hard and his upper tooth hit his 
bottom tooth and created an instant problem. He thought he had 
broken the entire existing bridge in his mouth. He went to the 
medical clinic and was given Tylenol 3 with Codeine. The next 
morning he went over to the NSA Bahrain. He noted that at that 
point his mouth had swollen up. He waited for the Navy Dentist to 
come off of a ship and after examining the Veteran he determined 
that he had to do an apicoectomy on one of his teeth, which was 
hooked to his existing bridge. 

The dentist had to go above the gum line and take out the nerve 
because the Veteran was in extreme pain. Then he had to do a 
procedure on a nerve in another area, then fill in the area and 
suture it. The veteran received prescriptions for pain, along 
with an antibiotic for infection. The following week the Veteran 
returned for follow up and the dentist said that everything 
looked like it was healing well. He removed the sutures and when 
the Veteran came home, he did not have any problems until June 
2003. 

At that point, he was back from the Persian Gulf and on duty with 
the Air National Guard, and his jaw started to bother him again. 
He went to see an oral surgeon, who found that he needed another 
apicoectomy. When he opened the Veteran up to do the procedure, 
the oral surgeon found a lot of infection along with a lesion. A 
biopsy was performed, which determined that the lesion was not 
cancerous. When the Veteran came back for follow-up, the oral 
surgeon found that everything looked good and was hopeful that 
the Veteran would not continue to have problems. He noted that 
if the Veteran did get another infection, it was best to have the 
bridge removed, allow the area to heal for about six months and 
then go back and perhaps get implants. 

The Veteran reported that he subsequently had another apicoectomy 
surgery in April 2004, done by a different oral surgeon due to 
him developing another infection. The oral surgeon informed him 
that he did not know if the surgical intervention would keep him 
from having future problems. Thus, the Veteran was concerned 
that he might need implants, which would be a very costly 
procedure. 

Further, the Veteran indicated that he currently had some level 
of constant infection in the affected area. He had taken 
antibiotics for the infection but it had not eliminated it. He 
noted that the oral surgeon who did the April 2004 surgery had 
indicated that the problem would probably flare up again. 

III. Law and Regulations

Under current VA regulations, compensation is only available for 
certain types of dental and oral conditions listed under 38 
C.F.R. § 4.150, such as impairment of the mandible, loss of a 
portion of the ramus, and loss of a portion of the maxilla. 
Compensation is available for loss of teeth only if such is due 
to loss of substance of body of maxilla or mandible due to trauma 
or disease such as osteomyelitis, but not periodontal disease. 
Otherwise, a Veteran may be entitled to service connection for 
dental conditions including treatable carious teeth, replaceable 
missing teeth, dental or alveolar abscesses, and periodontal 
disease, for the sole purposes of receiving VA outpatient dental 
services and treatment, if certain criteria are met. 38 U.S.C. 
§ 1712; 38 C.F.R. §§ 3.381, 17.161.

Legal authority describes various categories of eligibility for 
VA outpatient dental treatment, to include Veterans having a 
compensable service-connected dental condition (Class I 
eligibility); one-time treatment for Veterans having a 
noncompensable service-connected dental condition (Class II 
eligibility); those having a noncompensable service-connected 
dental condition adjudicated as resulting from a combat wound or 
other service trauma (Class II(a) eligibility); those who were 
detained as a POW (Class II(b) and Class II(c) eligibility); 
those who made prior applications for, and received, dental 
treatment from VA for noncompensable dental conditions but were 
denied replacement of missing teeth that were lost during any 
period of service prior to his or her last period of service 
(Class IIR (Retroactive) eligibility); those having a dental 
condition professionally determined to be aggravating disability 
from an associated service- connected condition or disability 
(Class III eligibility); those whose service-connected 
disabilities are rated at 100 percent by schedular evaluation or 
who are entitled to the 100 percent rating by reason of 
individual unemployability (Class IV eligibility); those who 
participate in a rehabilitation program under 38 U.S.C. chapter 
31 (Class V eligibility) and those who are scheduled for 
admission or who are otherwise receiving care and services under 
chapter 17 of 38 U.S.C., where dental care is medically necessary 
(Class VI eligibility). 38 U.S.C.A. § 1712 (West 2002 & Supp. 
2009); 38 C.F.R. § 17.161 (2009).

When all of the evidence is assembled, VA is responsible for 
determining whether the evidence supports the claim or is in 
relative equipoise, with the veteran prevailing in either event, 
or whether a fair preponderance of the evidence is against the 
claim, in which case the claim is denied. Gilbert v. Derwinski, 
1 Vet. App. 49, 55 (1990).

IV. Analysis

First, considering compensation, in the instant case, there is no 
indication of impairment of the mandible, loss of a portion of 
the ramus, or loss of a portion of the maxilla. There is also no 
evidence of loss of teeth due to loss of substance or body of the 
maxilla or mandible. Instead, the Veteran's problems of 
recurrent infection to tooth #6 are essentially analogous to a 
dental abscess, generally defined as a localized collection of 
pus buried in tissues, organs or confined spaces. See Dorlands 
Illustrated Medical Dictionary (30th ed. 2003). Accordingly, the 
governing regulations do not provide a basis for awarding service 
connected compensation for the Veteran's dental disability. 38 
U.S.C. § 1712; 38 C.F.R. §§ 3.381, 4.150.

Regarding dental treatment, the Board finds that although some of 
the service treatment records are unavailable, including any 
records of dental treatment from NSA Bahrain, the records do show 
an initial incidence of severe dental pain in the area of the 
Veteran's pre-existing dental bridge during service. Also, the 
Veteran is competent to testify regarding his experience of 
dental trauma in service and receipt of subsequent apicoectomy. 
Additionally, this testimony was corroborated by the testimony of 
the Veteran's fellow service member and is also consistent with 
the Veteran's receipt of subsequent apicoectomies involving tooth 
number 6 soon after service. Accordingly, given the totality of 
the evidence, the Board finds the Veteran's testimony concerning 
dental trauma credible. Accordingly, affording the Veteran the 
benefit of the doubt, the Board finds that the Veteran did 
experience dental trauma to tooth number six in service. See 
Note, 38 C.F.R. § 4.150, Diagnostic Code 9913. 

Additionally, as noted above, the disability of tooth 6 
experienced by the Veteran is essentially analogous to a dental 
abscess. Accordingly, it generally qualifies for service 
connection for receipt of dental treatment as a service connected 
non-compensable dental disability. 38 C.F.R. §§ 3.381, 17.161. 
Thus as the disability has been established as resulting from the 
dental trauma of the fall in service, the evidence reasonably 
establishes that the Veteran qualifies for Class IIa VA dental 
treatment (i.e. any treatment indicated as reasonably necessary 
for the correction of this dental disability). 38 C.F.R. 
§ 17.161. To the extent other teeth are medically indicated as 
needed to assist in treatment of tooth 6, they should be 
considered part of the treatment.

The Board notes that during the May 2004 VA dental consultation, 
the Veteran was noted to have reported that he lost tooth #7 in 
service. However, in the Veteran's reports made in conjunction 
with his claim for service connection, to include his sworn 
hearing testimony, he has made no mention of losing tooth #7 
either during the fall in service or during the subsequent dental 
treatment received at NSA Bahrain. Instead, he has simply 
asserted that he received an apicoectomy in service, involving 
one tooth hooked to his existing bridge, which was later 
identified as tooth 6. Thus, the Board credits the Veteran's 
hearing testimony and other statements made in conjunction with 
his claim, rather than the single statement made to the May 2004 
VA examiner. Accordingly, the weight of the evidence is against 
a finding that tooth #7 was lost as a result of the Veteran's 
April 2002 injury during service. The Board also notes that 
there is no basis in the record for the Veteran to qualify for VA 
dental treatment under any of the other applicable provisions. 
38 C.F.R. § 17.161. If, as noted above, there is a need to 
involve other teeth in successfully treating tooth #6, this grant 
should be taken to allow such treatment.

In summary, as the Veteran is shown to have a dental disability 
of tooth number 6 analogous to a dental abscess, he does not 
qualify for service-connected compensation for this disability. 
However, as this non-compensable dental disability is reasonably 
shown to have been caused by dental trauma in service, the 
Veteran does qualify for Class IIA dental treatment for tooth 
number 6 (and other teeth as needed for successful treatment for 
tooth # 6. 

ORDER

Service connection for a dental disability for VA compensation 
purposes is denied.

Service connection for a dental disability to tooth number 6 (and 
associated teeth as needed) for VA treatment purposes is granted. 

____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

 Department of Veterans Affairs