Citation Nr: 1206475 
Decision Date: 02/22/12 Archive Date: 03/01/12

DOCKET NO. 08-29 674 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to an initial compensable rating for left knee strain, status post arthroscopic surgery. 


REPRESENTATION

Appellant represented by: Florida Department of Veterans Affairs


ATTORNEY FOR THE BOARD

L. A. Rein, Counsel

INTRODUCTION

The Veteran had active service from January 2004 to January 2008.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah. Jurisdiction of this matter is with the RO in St. Petersburg, Florida.

The Veteran was scheduled for a December 2011 hearing before a member of the Board at the RO as requested in the September 2008 substantive appeal. However, she failed to appear without explanation and has not requested the hearing be rescheduled. Therefore, the request is considered withdrawn. 38 C.F.R. § 20.704(d) (2011).


FINDING OF FACT

Since the January 7, 2008 effective date of the grant of service connection, the Veteran's left knee strain, status post arthroscopic surgery, has been manifested by complaints of pain, to include pain on motion, with normal extension to 0 degrees, and normal flexion to 140; there are no medical findings of arthritis, fatigue, weakness, lack of endurance, subluxation, or instability. 


CONCLUSION OF LAW

The criteria for an initial compensable rating for left knee strain, status post arthroscopic surgery, have not been met. 38 U.S.C.A. §§ 1155 , 5107 (West 2002); 38 C.F.R. §§ 3.159 , 3.321, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5260 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. § 3.159 (2010); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

VA's notice requirements apply to all five elements of a service connection claim: Veteran status, existence of a disability, a connection between the Veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

Compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction. However, the notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). 

In this appeal, a November 2007 pre-rating letter provided notice of what was needed to substantiate the claim for service connection for left knee strain, status post arthroscopic surgery. That letter also provided the Veteran with information regarding disability ratings and effective dates. Following that letter, the RO granted service connection for left knee strain, status post arthroscopic surgery in a February 2008 rating decision. An April 2008 letter informed the Veteran of the information and evidence needed to support the claim for an increased rating for her service-connected left knee disability on appeal. After the issuance of the April 2008 letter, the Veteran and her representative were afforded additional opportunities to respond before the RO readjudicated the claim in a September 2008 statement of the case that set forth the criteria for higher ratings for left knee strain, status post arthroscopic surgery. Therefore, the Veteran is not shown to be prejudiced by the timing of compliant notice. Mayfield v. Nicholson, 20 Vet. App. 537 (2006); Prickett v. Nicholson, 20 Vet. App. 370 (2006) (issuance of a fully compliant notification followed by readjudication of the claim, such as in a statement of the case or supplemental statement of the case, is sufficient to cure a timing defect).

Additionally, the record also shows that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matter on appeal. Pertinent medical evidence of record includes the Veteran's service treatment records, VA medical records, and the reports of VA examinations. Also of record and considered in connection with the appeal are written statements provided by the Veteran as well as by her representative, on her behalf.

While the Veteran contends that the VA examination was inadequate because the examiner did not perform range of motion studies that considered pain, the Board disagrees. When VA undertakes to provide a VA examination, it must ensure that the examination is adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007). The Board finds that the January 2008 examination report on file contains sufficient findings with which to properly evaluate the appellant's claim for an initial compensable rating for left knee strain, status post arthroscopic surgery and is thus deemed adequate for rating purposes. McLendon v. Nicholson, 20 Vet. App. 79 (2006). That report includes the examiner's review of the Veteran's claims file, the Veteran's pertinent medical history and complaints, and pertinent physical examination findings.

In summary, the Board finds that VA's duties to notify and assist the claimant have been satisfied. Through various notices, the appellant has been notified and made aware of the evidence needed to substantiate the claims herein decided, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with any claim. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the appellant or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matters herein decided, at this juncture. Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (rejecting the argument that the Board lacks authority to consider harmless error).

Disability ratings are determined by application of the criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2011). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating applies. 38 C.F.R. § 4.7 (2011). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2011). 

The Veteran's entire history is to be considered when making disability evaluations. 38 C.F.R. § 4.1 (2011); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of assignment of different ratings for distinct periods of time, based on the facts found is required. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating based on functional loss due to limited or excess movement, pain, weakness, excess fatigability, or incoordination, to include during flare-ups and with repeated use, when those factors are not contemplated in the relevant rating criteria. DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.40, 4.45, 4.59 (2011). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the Diagnostic Codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). 

Service medical records show that in April 2006, the Veteran underwent a left knee arthroscopy for a diagnosis of tear to the medial meniscus. A June 2007 service record shows that the Veteran was seen for complaints of pain in the posterior aspect of her left knee. Physical examination revealed that the Veteran had no intra-articular effusion, range of motion from 0 degrees to approximately 150 degrees, no varus or valgus instability at 0 to 30 degrees, negative Lachman test, and negative drawer test. There was no medial or lateral joint line tenderness, and no tenderness along the medial or lateral hamstring although the Veteran stated that was where she has the discomfort in the distal hamstring region. She had no tenderness to patellar ballottement or luxation; negative Lachman, negative drawer, and negative pivot. X-rays demonstrated slight patellar tilt. Otherwise, no loose bodies, arthritis or other intra-articular pathology of note. The impression was left posterior inflammation, left knee. 

After service, the medical records include a January 2008 VA joints examination report showing that the Veteran complained of daily knee pain caused by various triggers. Summary of left knee joint symptoms were negative for deformity, giving way, instability, stiffness, incoordination, episodes of dislocation or subluxation, locking episodes, effusion, and symptoms of inflammation. The left knee symptoms included pain, weakness, and flare-ups on a daily basis of moderate severity and that could last for hours. Factors for flare-ups included bending of the left knee, stairs, and prolonged standing. As to extent of effects of flares on limitation of motion or other functional impairment, it was noted that the Veteran avoids bending the left knee, but was able to walk at a regular pace. The examiner noted that there were no constitutional symptoms of arthritis and no incapacitating episodes of arthritis. The Veteran was able to stand for three to eight hours, with only short rest periods. She had not limitation to walking and did not use an assistive device. 

Physical examination revealed that a weight-bearing joint was affected. Her gait was normal. There was no loss of a bone and no inflammatory arthritis. There was no crepitation of the left knee, no bumps consistent with Osgood-Schlatter's disease, no mass behind the knee, no clicks or snaps, no grinding, no instability, and no abnormalities. The examiner found no objective evidence of pain with active motion on the left side. Left knee flexion was 0 to 140 degrees and left knee extension was normal, to 0 degrees. There was no objective evidence of pain following repetitive motion and not additional limitations after three repetitions of range of motion. There was no joint ankylosis. The examiner noted a review of a December 2007 x-ray that showed no radiographic evidence of any bony or soft tissue pathology. The diagnosis was left knee strain with no significant effects on usual occupation. The left knee disability severely affected her ability to exercise and play sports. 

In a February 2008 rating decision, the RO granted service connection for left knee strain status post left knee arthroscopic surgery and assigned an initial 0 percent rating pursuant to diagnostic code 5260.

In her February 2008 notice of disagreement, the Veteran asserted that the VA examiner did not conduct a range of motion test and that she did have painful range of motion. She requested to have another examination on her knee. However, the Board finds that the January 2008 VA examiner provided findings sufficient to rate the disability on appeal. 

An August 2008 VA outpatient record shows that the Veteran complained of chronic left knee pain, 8 out of 10, due to an old injury. She described the pain as throbbing, chronic, and aggravated by certain movements that affected her activities. 

The Veteran is current rated for limitation of flexion of her left knee. A 0 percent rating is assigned for flexion limited to 60 degrees. A 10 percent rating is assigned for flexion limited to 45 degrees. A 20 percent rating is assigned for flexion limited to 30 degrees. A 30 percent rating is assigned for flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260 (2011). 

A 0 percent rating is assigned for extension limited to 5 degrees. A 10 percent rating is assigned for extension limited to 10 degrees. A 20 percent rating is assigned for extension limited to 15 degrees. A 30 percent rating is assigned for extension limited to 20 degrees. A 40 percent rating is assigned for extension limited to 30 degrees. A 50 percent rating is assigned for extension limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2011).

Normal range of extension of the knee is to 0 degrees and normal range of flexion of the knee is to 140 degrees. 38 C.F.R. § 4.71a, Plate II (2011). 

A 10 percent rating is assigned for slight impairment due to recurrent subluxation or lateral instability. A 20 percent rating is assigned for moderate impairment due to recurrent subluxation or lateral instability. A 30 percent rating is assigned for severe impairment due to recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2011).

A claimant who has arthritis (resulting in limited or painful motion) and instability of a knee may be rated separately under Diagnostic Codes 5003 and 5257. However, any separate rating must be based on additional compensably disabling symptomatology. VAOPGCPREC 23-97 (1997), 62 Fed. Reg. 63,604 (1997); VAOPGCPREC 9-98 (1998), 63 Fed. Reg. 56,704 (1998). Separate ratings under for limitation of flexion of the leg and limitation of extension of the leg, may also be assigned for disability of the same joint if separate compensably ratable disability is shown. VAOGCPREC 9-2004 (2004); 69 Fed. Reg. 59990 (2004). 

Considering the objective medical evidence of record in light of the above criteria, the Board finds that an initial compensable rating for the Veteran's service-connected left knee disability is not warranted. 

First addressing limited motion, the Board notes that the evidence reveals that the Veteran has had normal flexion of the left knee to 140 degrees, which would not warrant a compensable rating under Diagnostic Code 5260. Moreover, the Veteran has been found to have normal extension to 0 degrees, and a compensable rating under Diagnostic Code 5261 is also not warranted. That is so even considering functional loss due to pain and other factors. 38 C.F.R. §§ 4.40, 4.45 (2011); DeLuca v. Brown, 8 Vet. App. 202 (1995). While the Board is aware of the Veteran's complaints of pain, the Veteran's pain, to include pain on motion, is not shown by competent, objective evidence to be so disabling as to warrant even the minimal compensable rating under Diagnostic Code 5260 or Diagnostic Code 5261, because the pain is not shown to limit motion to the level required for compensable ratings. The Board finds no basis for assignment of any single or separate compensable rating for limited flexion or extension of the left knee.

The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2011); Burton v. Shinseki, 25 Vet. App 1 (2011). However, the January 2008 VA examiner found no objective evidence of pain on active motion and also did not find an unstable or malaligned left knee. Therefore, the Board finds that a compensable rating is not warranted.

The Board has also considered the applicability of other potentially applicable diagnostic codes for rating the Veteran's service-connected left knee disability, but finds that no initial higher rating is assignable. Initially, the Board notes that there are no objective findings that the Veteran has arthritis of the left knee, therefore, consideration of an initial higher rating under Diagnostic Code 5003 are not for consideration. A compensable rating would require X-ray evidence of arthritis. 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2011).

The Veteran has not been diagnosed with ankylosis of the left knee, dislocated semilunar cartilage, or impairment of the tibia and fibula. Therefore, the Board finds that Diagnostic Codes 5256, 5258, and 5262 are not applicable. 38 C.F.R. § 4.71a (2011). The Board has also considered the application of Diagnostic Code 5257, for recurrent subluxation or lateral instability of the knee. However, the January 2008 VA examination report was negative for findings of instability in the Veteran's left knee. Therefore, that diagnostic code is not applicable. For that reason, there also is no basis for assignment of separate ratings for limited motion and instability. 

Additionally, the Board finds that at no point since the effective date of service connection has the Veteran's service-connected left knee strain, status post arthroscopic surgery been shown to be so exceptional or unusual as to warrant the referral for consideration of the assignment of any higher rating on an extra-schedular basis. 38 C.F.R. § 3.321(b)(1) (2011). In this regard, the evidence does not show an exceptional or unusual disability picture with related factors, such as marked interference with employment or frequent periods of hospitalization, so as to warrant referral of the case to appropriate VA officials for consideration of an extra schedular rating. 38 C.F.R. § 3.321(b)(1) (2011); Shipwash v. Brown, 8 Vet. App. 218 (1995). Here, the record does not show that the Veteran has been hospitalized for her service-connected left knee strain, status post arthroscopic surgery. There is no objective evidence revealing that her condition caused marked interference with employment, beyond that already contemplated by the schedular rating criteria. In this case, the Board finds that the schedular criteria are adequate to rate the Veteran's service-connected left knee strain, status post arthroscopic surgery. The rating schedule fully contemplates the described symptomatology, and provides for ratings higher than that assigned based on more significant functional impairment. Thus, the threshold requirement for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) is not met. Thun v. Peake, 22 Vet. App. 111 (2008) (threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the schedular evaluation is inadequate). 

Under these circumstances, the Board must conclude that the criteria for an initial compensable rating for left knee strain, status post arthroscopic surgery, have not been met at any point since the effective date of the grant of service connection. Therefore, there is no basis for any staged rating and the claim for an initial compensable rating for left knee strain, status post arthroscopic surgery, must be denied. The preponderance of the evidence is against assignment of any higher rating, and the claim is denied. 38 U.S.C.A § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2011); Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 








ORDER

Entitlement to an initial compensable rating for left knee strain, status post arthroscopic surgery, is denied.



____________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs