Citation Nr: 1536755 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 08-16 854 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

1. Entitlement to a separate rating for neurological residuals associated with a fractured right tibia and fibula. 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

Catherine Cykowski, Counsel


INTRODUCTION

The Veteran served on active duty from January 1977 to February 1980.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. 

In August 2009, the Veteran testified at a videoconference hearing before the undersigned Acting Veterans Law Judge. 

The Board previously remanded this matter for additional development in January 2010, to include affording the Veteran a VA examination and obtaining records from the Social Security Administration. 

In a June 2014 decision, the Board granted a 40 percent rating for residuals of a fractured right tibia and fibula, status post bone graft, with a history of right calf atrophy and neuropathy of the right saphenous nerve. The Board denied a separate rating for neurological impairment of the right lower extremity. The Veteran appealed the June 2014 decision to the United States Court of Appeals for Veterans Claims (Court). In June 2014, the Court partially vacated the Board's decision and remanded the matter to the Board for discussion consistent with the Joint Motion. 

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).




FINDING OF FACT

The neurological impairment associated with service-connected residuals of fractured right tibia and fibula approximates moderate incomplete paralysis of the right superficial peroneal nerve.


CONCLUSION OF LAW

The criteria for a 10 percent rating for moderate incomplete paralysis of the superficial peroneal nerve have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.124a, Diagnostic Code 8522 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

VA's Duties to Notify and Assist

As provided for by VCAA, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 
16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the AOJ, in this case the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In a claim for an increased rating, the VCAA requires only generic notice as to the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

Here, a May 2005 letter informed the Veteran of the evidence required to substantiate the claim for an increased rating for his right leg disability. A January 2009 letter fulfilled the requirements of Vazquez. The January 2009 letter informed the Veteran of how disability rating are determined and informed the Veteran that evidence to be considered in determining a disability evaluation includes the nature and symptoms of the condition, the severity and duration of symptoms and the impact of the condition on employment and daily life. The letter listed examples of evidence that may affect how a disability evaluation is assigned. While a fully compliant VCAA notice was provided after the initial adjudication of the claim on appeal, the provision of the fully compliant notice letter in January 2009, followed by a subsequent readjudication in a supplemental statement of the case in a statement of the case in March 2009, cured the timing of the notice. See Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as an SOC or SSOC, is sufficient to cure a timing defect).

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service medical records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The record indicates that the RO obtained all information relevant to the Veteran's increased rating claim. The service treatment records have been obtained, as well as post-service VA treatment records identified by the Veteran. The Veteran had VA examinations in January 2008 and May 2010 which addressed the impairment associated with his fractured right tibia and fibula. When VA undertakes to provide a VA examination or obtain a VA examination or opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran has been afforded adequate examinations. The claims file and treatment records were reviewed, the Veteran's history was taken, and complete examinations were conducted which fully addressed the symptoms and manifestations of the Veteran's disability. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4).

In August 2009, the Veteran testified at a videoconference hearing held before the undersigned Acting Veterans Law Judge. At that hearing, testimony was presented on the issue of entitlement to an increased evaluation for residuals of a fractured right tibia and fibula, status post bone graft. The Acting Veterans Law Judge and the Veteran's representative outlined the issues on appeal, and the Veteran and representative engaged in a colloquy as to substantiation of the claims, including identifying relevant types of evidence. Overall, the hearing was legally sufficient and the duty to assist has been met. 38 U.S.C.A. § 5103A (West 2014); Bryant v. Shinseki, 23 Vet. App. 488 (2010).

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained the relevant records, and has provided adequate examinations to the Veteran. Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claims. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).





Increased Rating Claims

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

The degrees of disability specified are considered adequate to compensate for a loss of working time proportionate to the severity of the disability. 38 C.F.R. § 4.1. Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27 (2014). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. It is the policy of the VA to administer the law under a broad interpretation, consistent with the facts in each case, with all reasonable doubt to be resolved in favor of the claimant. 
38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. After careful consideration of the evidence, any reasonable doubt remaining is resolved in the claimant's favor. 
38 C.F.R. § 4.3.

In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of the disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating was filed until the final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Board has reviewed all of the evidence in the claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 
1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claims.

Analysis of Claim

An October 1982 rating decision granted service connection for a history of fracture, right tibia and fibula, with bone graft, atrophy of the right calf and neuropathy of the saphenous nerve. A 10 percent rating was assigned from June 4, 1981. A claim for an increased rating was received in April 2005. A June 2015 Board decision granted a 40 percent rating for residuals of a fracture of the right tibia and fibula. A November 2014 rating decision, which effectuated the Board's decision, assigned a 40 percent rating from April 21, 2005. 

In this case, as indicated in the Joint Remand, the Veteran has abandoned the appeal for a higher rating for residuals of a fracture of the right tibia and fibula. Accordingly, the Board will limit its discussion to the issue of whether a separate compensable rating for neurological residuals is warranted. 

At the Board hearing in August 2009, the Veteran testified that he experienced numbness in the area of the right leg where surgery was performed. He also testified that he had tingling in his toes. The Veteran testified that he experienced numbness and tingling since his surgery. 

Upon VA examination in January 2008, the Veteran reported being diagnosed with neuropathy of the saphenous nerve secondary to fracture of the right tibia and fibula with bone graft with history of atrophy of the right calf. The parts of the body affected were the toes, ankle, calf, knee, inner thigh, lower back, groin and hip. He reported that, due to nerve disease, there was tingling and numbness and abnormal sensation of the affected parts. There was no anesthesia or paralysis of the affected parts. The Veteran reported that he experienced pain, weakness and cramping in the calf, thigh and knee. He reported that the symptoms occurred constantly. His treatment included pain medication, massage and rest. The Veteran reported that he was unable to function in gainful employment involving prolonged activity or stress on his right leg. 

Upon physical examination, the examiner noted injury to the cutaneous tibial nerve and superficial tibial nerve. The examiner noted motor dysfunction with decreased sensation of the right lower leg on the anterior surface and right foot. Neurological examination showed reduced strength of the right leg. Sensory function was abnormal with findings of decreased sensation in the right leg and foot. The Veteran had 2+ ankle jerk and 2+ knee jerk in the right lower extremity. The examiner noted muscle atrophy and sensory loss in the right lower leg. 

Upon VA examination in May 2010, noted peripheral nerve symptoms included numbness, paresthesias, dysesthesia and impaired coordination. The Veteran reported numbness, tingling and a burning sensation. The Veteran noted mild peroneal strength weakness in eversion of the right ankle was lessened as compared to the left in motion and strength. The VA examiner indicated that the affected nerve was the peroneal nerve fibular branch/ peroneal. Sensory examination of the right lower extremity showed normal vibration, pain, light touch and position sense. The examiner indicated that the only abnormal findings on sensory examination were pain and diminished light touch at the laceration site. The Veteran had 1+ right ankle and right knee reflexes and normal plantar flexion. The examiner indicated that the Veteran had decreased muscle bulk in the right lower extremity. The examiner noted that no paralysis was found, only mild neuropathy. 

In this case, the testimony and VA examinations reflect that subjective symptoms include pain, numbness and tingling in his right leg and foot. The VA examinations demonstrate objective findings of diminished sensation, muscle atrophy and weakened eversion of the right foot. The May 2008 examination indicated that the affected nerves of the right lower extremity include the cutaneous tibial nerve and superficial tibial nerve. The May 2010 noted impairment of the peroneal nerve branch. The May 2008 examiner did not describe the severity of impairment of the nerves, while the May 2010 examiner characterized the Veteran's neuropathy as mild. 

Diagnostic Code 8521 pertains to paralysis of the external popliteal nerve ( common peroneal). A 10 percent rating is assignable for mild incomplete paralysis. A 20 percent rating is assignable for moderate incomplete paralysis. A 30 percent rating is assignable for severe incomplete paralysis. 38 C.F.R. § 4.124a, Diagnostic Code 8521. 

Diagnostic Code 8522 pertains to paralysis of the superficial peroneal nerve. A 0 percent rating is warranted for mild incomplete paralysis of the nerve. A 10 percent rating is warranted for moderate incomplete paralysis. A 30 percent rating is warranted for complete paralysis with eversion of the foot weakened. 38 C.F.R. 
§ 4. 124a, Diagnostic Code 8522.

Paralysis of the anterior tibial (deep peroneal) nerve is rated according to Diagnostic Code 8523. A non-compensable rating is assignable for mild incomplete paralysis. A 10 percent rating is assignable for moderate incomplete paralysis. A 20 percent rating is warranted for severe incomplete paralysis. A 30 percent rating is warranted for complete paralysis of the deep peroneal nerve with dorsal flexion of the foot lost. 38 C.F.R. § 4.124a, Diagnostic Code 8523. 

Under Diagnostic Code 8527, a non-compensable (zero percent) rating is assignable for mild to moderate paralysis of the internal saphenous nerve. 38 C.F.R. § 4. 124a, Diagnostic Code 8527. 

Diagnostic Code 8529 pertains to paralysis of the external cutaneous nerve of the thigh. A non-compensable rating is warranted for mild or moderate paralysis. A 10 percent rating is warranted for severe to complete paralysis. 38 C.F.R. § 4.124a, Diagnostic Code 8529. 

In light of the objective findings and symptoms outlined above, including impairment of the peroneal nerve branch and weakened eversion of the foot, the Board finds that the neurogical impairment of the right lower extremity approximates moderate incomplete impairment of the superficial peroneal nerve. Accordingly, a 10 percent rating is warranted, pursuant to Diagnostic Code 8522, throughout the increased rating period. A rating in excess of 10 percent is not warranted in the absence of evidence of severe incomplete paralysis of the superficial peroneal nerve or deep peroneal nerve or severe to complete paralysis of the internal saphenous nerve or external cutaneous nerve. 

The Board notes that the VA examination reports identified several affected nerves of the right lower extremity. The Board finds that separate ratings are not warranted for each affected nerve of the right lower extremity. In this regard, the evidence shows that there is diminished sensation of the right lower extremity and weakened eversion of the right foot but does not distinguish the manifestations attributable to the affected nerves. See 38 C.F.R. § 4.14; see also Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994) (holding that the critical element in the assignment of separate ratings under diagnostic codes is that none of the symptomatology is duplicative or overlapping).

For the reasons set forth above, a 10 percent rating, but no higher is granted for moderate incomplete paralysis of the superficial peroneal nerve. 

Extraschedular considerations

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2014). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 
38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

The Board finds that the rating criteria contemplate the Veteran's neurological manifestations associated with service-connected residuals of right fractured tibia and fibula. The rating criteria consider the degree of paralysis of the affected nerves. 

Finally, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.


ORDER

A 10 percent rating is granted for moderate incomplete paralysis of the right superficial peroneal nerve, subject to regulations governing the payment of monetary benefits.

REMAND

A claim of entitlement to individual unemployability benefits is deemed to have been submitted as part of any claim for a higher initial rating or an increased rating when evidence of unemployability is submitted at the same time as the claim and the veteran seeks the highest rating possible, Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).

The record contains evidence of unemployability. Upon VA examination in January 2008, the Veteran reported that he was unable to function in gainful employment involving any prolonged activity or stress on his right leg. At the May 2010 VA examination, the Veteran reported that he was unemployed due to right lower extremity issues. The May 2010 VA examiner noted a moderate decrease in the ability to stand and walk. The examiner opined that the Veteran could perform a seated or sedentary occupation. A December 2014 medical opinion addressed the occupational impact of service-connected adjustment disorder and but did not consider his other service-connected disabilities. 

The examinations of record did not consider the Veteran's employability in light of all of his service-connected disabilities. The Board finds that a current examination is warranted to ascertain the current occupational impairment due to the Veteran's service-connected disabilities. 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a general medical examination to determine the functional impairment caused solely by his service-connected disabilities, singly and in combination. The examiner should review the claims file in conjunction with the examination. The examination report should indicate that the claims file was reviewed.

The examiner should describe the Veteran's functional impairments in detail and should provide a rationale for any opinions provided regarding the degree of functional impairment due to his service-connected disabilities.

2. After completion of the requested actions, readjudicate the issue of entitlement to a TDIU, to include on an extraschedular basis. If the benefit sought remains denied, the Veteran and his representative should be furnished a supplemental statement of the case and afforded an appropriate period of time to respond, before returning the case to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
SARAH B. RICHMOND
Acting Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).