http://www.va.gov/vetapp16/Files3/1626431.txt

Citation Nr: 1626431 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 09-47 921 )
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia

THE ISSUES

1. Entitlement to service connection for sinus infections.

2. Entitlement to service connection for a low back disability.

3. Entitlement to service connection for chest pain to include as due to costochondritis, urinary tract infections, or heart murmur, or secondary to service-connected major depressive disorder with anxiety and panic.

ATTORNEY FOR THE BOARD

M. Coyne, Associate Counsel

INTRODUCTION

The Veteran served on active duty service from July 1981 to May 1990.

This appeal arises from a July 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia.

This claim was remanded by the Board to the AOJ in December 2012. That additional development has been completed and the claim has been returned to the Board for further adjudication.

The issues of entitlement to service connection for sinus infections and chest pain are REMANDED to the Agency of Original Jurisdiction.

FINDING OF FACT

The preponderance of the evidence does not demonstrate that the Veteran's in-service low back pain caused or is related to any current low back disability.

CONCLUSION OF LAW

The Veteran's low back disability is not related to an incident of active service. 38 U.S.C.A. §§ 1101, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

VA has a duty to notify and assist a claimant in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Proper notice must inform the claimant of any information and evidence not of record that is necessary to substantiate the claim. The notice must also identify evidence VA will seek to provide for the Veteran, and any additional evidence the claimant is expected to provide to VA. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015). However, where the evidence demonstrates the Veteran had actual knowledge of the elements of her claim, any failure to receive a notice letter is not prejudicial. Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007); Prickett v. Nicholson, 20 Vet. App. 370 (2006). 

Prior to initial adjudication, VA sent the Veteran a July 2006 letter satisfying the duty to notify, but that letter was returned as undeliverable. However, VA's statutory duties to notify and assist were later satisfied by an October 2009 statement of the case, which outlined the statutory criteria for entitlement to service connection and other regulations pertinent to VA's duties to notify and assist. Accordingly because the record shows that the Veteran had actual knowledge of the elements of her claim and no prejudice has been alleged, VA has satisfied its notice duties to the Veteran with regard to the low back service connection claim.

Additionally, part of VA's duty to assist includes the procurement of, or the provision of assistance to the claimant in the procurement of service medical records and other pertinent treatment records. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2015). Here, a review of the record shows that the Veteran's service medical records, private and VA post-service treatment records, and Social Security Administration (SSA) records relevant to the claim for service connection for a low back disability have been procured. Accordingly, VA has met the duty to assist the Veteran in procuring outstanding treatment records.

Moreover, when the Board remands a claim to the RO it has a duty to ensure substantial compliance with the remand requests. Dyment v. West, 13 Vet. App. 141 (1999); Stegall v. West, 11 Vet. App. 268 (1998). The Veteran's claim was remanded for additional development in December 2012, to included procuring any outstanding VA treatment records since May 2011, requesting any outstanding SSA records, and readjudicating the claim. Those outstanding records have been procured, and the record indicates that the Veteran's claims were most recently readjudicated in a February 2015 supplemental statement of the case.

When required to adequately adjudicate a claim, VA must provide a medical examination assessing the claimed disabilities. McLendon v. Nicholson, 20 Vet. App. 79 (2006). A medical examination is adequate when it describes the disability in sufficient detail such that the examiner's evaluation of the disability is fully informed. Barr v. Nicholson, 21 Vet App. 303 (2007). A medical examination is fully informed when the examiner has sufficient facts upon which to base an opinion relevant to the issue at hand. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Here, VA examinations of the Veteran's low back were provided in April 2012 and May 2014. However, a review of the April 2012 VA examination report shows that this examiner did not acknowledge the Veteran's 2011 diagnosis of intervertebral disc syndrome. Accordingly, because the rationale and medical basis for the April 2012 VA examiner's analysis is not fully informed, the Board finds that examination report is not complete for rating purposes. 

In contrast, a review of the May 2014 VA examination report shows that it was based on a thorough review of the claims file with specific references to service medical records and relevant post-service treatment records, involved an in-person examination with consideration of the Veteran's lay statements, and where possible, diagnostic testing. Additionally, a review of the examiner's rationale for the etiology opinion provided in the May 2014 examination report shows that it is sufficiently detailed for rating purposes because it specifically referenced the Veteran's diagnosed in-service back condition and her current low back diagnosis of intervertebral disc syndrome, and was based on specific references to recent diagnostic imaging that show the severity and nature of the intervertebral disc syndrome. Therefore, the Board finds that the May 2014 VA examination report is adequate for rating purposes.

The Board finds that VA met the duties to notify and assist for the claim for service connection for a low back disability and will adjudicate that claim.

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). First, the Board must determine whether the evidence comes from a competent source. The Board must then determine if the evidence is credible. Barr v. Nicholson, 21 Vet. App. 303 (2007). Then, the Board weighs the probative value of the evidence in light of the entirety of the record. 

When the positive evidence supporting a claim and the negative evidence indicating a denial of the claim is relatively equal, reasonable doubt will be resolved in favor of the Veteran. 38 U.S.C.A. §5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2015). 

To establish service connection requires: (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a nexus between the claimed in-service disease or injury and the current disability. 38 C.F.R. § 3.303 (2015); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247 (1999). A disability is considered to be present if it exists at the time the claim is filed or during or contemporary to the pendency of the appeal. McClain v. Nicholson, 21 Vet. App. 319 (2007); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013).

A review of the service treatment records shows that the Veteran reported back pain on several occasions. However, the vast majority of those occasions related to back pain during her menstrual cycle or back pain related to urinary tract infections and in one instance in April 1990, due to ectopic pregnancy. The Veteran's 1980 enlistment examination is negative for any report or observation of low back conditions. At an April 1990 service separation examination, the Veteran's indicated that recurrent back pain was an issue. The examiner who conducted the separation examination explained the Veteran's history of urinary tract infections and back pain during her menstrual cycle. That note is consistent with service treatment records from February 1982, July 1984, June 1989, July 1989, and February 1990. 

As for treatment records that do not relate to UTIs, menstrual pain, or ectopic pregnancy, the Veteran's service treatment records show an instance in March 1984 in which the Veteran reported that she had pain the middle of back after bending to lift a baby. The Veteran was diagnosed with lower back pain, and was instructed not to engage in any heavy lifting, bending, or strenuous activity. Additionally, in December 1985 the Veteran was twice treated for mid-back pain and neck pain after a motor-vehicle accident in which the Veteran was seated in the rear-passenger seat of a vehicle stopped at a traffic light and the car was struck from behind. However, an examination of the spine showed that she had full-range of motion of the spine and was diagnosed with sub-acute strain. She was treated with medication, ice, and range of motion exercises. A second December 1985 examination found that the Veteran still had some tenderness over her spine, but not muscle spasm, and normal reflexes, motor skills, and range of motion. She was diagnosed with probable muscle strain and referred for an orthopedic consult. On orthopedic examination X-rays of the Veteran were normal, and she had normal gait without radicular symptoms. She was diagnosed with acute lumbar strain and given a muscle relaxant and analgesic. 

The May 2014 VA examiner specifically noted much of the Veteran's foregoing service treatment history, identifying several treatment records by date. The examiner further noted the Veteran's X-ray diagnosis of mild degenerative disc disease, and recent April 2014 magnetic resonance imaging (MRI) imaging results showing mild facet arthrosis, and degenerative changes in the mid to lower lumbar spine with varying degrees of stenosis. The examiner also noted a February 2014 X-ray which indicated that the Veteran had endpoint sclerosis and spurring from L1-L2 to L4-L5, indicative of spondylotic disease. The Veteran was noted to have mild spondylotic disease throughout the lumbar spine, most pronounced at L3-L4. Those diagnostic results were consistent with a March 2003 finding of mild thoracic spondylosis by private physician Dr. B.J., described as degenerative changes of the thoracic spine. At the May 2014 examination, the Veteran reported that she was involved in the motor vehicle accident during service, and explained the pain had also started after sit-ups and push-ups during physical fitness training, but did not allege any back trauma aside from the motor vehicle accident. The Veteran indicated that her low back pain was intense after prolonged sitting and standing, and was generally achy.

After reviewing the service medical records, February 2014 X-rays, and April 2014 MRI results in detail, the examiner provided a negative etiology opinion, finding that it was less likely than not, or less than a 50 percent probability, that the current intervertebral disc disease was related to the inservice complaints of back pain. In explaining the rationale, the examiner indicated that the etiology of the Veteran's degenerative disc disease or intervertebral disc disease was clear and specific because degenerative changes occur over a period of time due to wear and tear. The examiner explained that the Veteran separated from service in 1990 but did not develop intervertebral disc syndrome until 2011 and her intervertebral disc syndrome was mild. In contrast, the examiner noted that in service the Veteran was diagnosed with back strain, and that there was no evidence that the Veteran's low back condition either began during service or was worsened by military service.

Additionally, the Board notes that the Veteran submitted a medical article defining degenerative disc diseases and explaining some of its underlying causes, described as wear and tear over time, or degenerative changes that lead to less space between the discs of the spine. This article was submitted in November 2014 and is from the Cedars-Sinai website, a private hospital or medical center.

The Veteran has a diagnosis of intervertebral disc syndrome. The Board finds that the Veteran's statements that she experienced low back pain after the motor vehicle accident in service and that the pain started while she was doing sit-ups and push-ups during physical training to be both competent and credible evidence. The Board makes that finding because back pain is a bodily occurrence and symptom that does not require any medical expertise to observe, and it is partially corroborated by the Veteran's service treatment records. The Veteran's lay statements combined with the service treatment records provide some probative evidence in support of in-service incurrence of some back trauma.

However, although the Veteran has a clear diagnosis of intervertebral disc syndrome with degenerative disc disease, and while her lay statements regarding her experience of back pain are consistent with the service treatment records, the Board finds that there is insufficient evidence of medical nexus between the Veteran's in-service symptoms of back pain and the current diagnosis of intervertebral disc syndrome. The Board finds that the May 2014 VA examiner's negative etiology opinion is probative and is the most persuasive evidence in this case. The examiner's opinion was based on a detailed history from the Veteran in which she had indicated that she did not have history of back trauma aside from the motor vehicle accident in-service, and the Veteran's recent diagnostic test results indicated that the degenerative changes to her low back were mild. Finally, the Board finds that the November 2014 article submitted by the Veteran is of little probative value compared to the May 2014 etiology opinion because it is a general description of the Veteran's condition that does not account for individual circumstances. The Board notes that the article is somewhat corroborative of the May 2014 VA examiner's etiology opinion because it provides some corroborative support for the examiner's conclusion that the Veteran's intervertebral dis syndrome is the result of gradual wear and tear.

Additionally, the Board notes that the Veteran had normal X-ray results after her December 1985 motor vehicle accident and was diagnosed only with back strain. Although the Veteran had some service treatment records for back pain after the December 1985 motor-vehicle accident, the diagnoses for that treatment was for acute, non-musculoskeletal illnesses and menstrual pain. While the Board acknowledges that the Veteran was noted to have some degenerative changes short of intervertebral disc disease in her thoracic spine as early as March 2003, the May 2014 VA examiner's etiology opinion, combined with the Veteran's normal X-ray results in service, her in-service diagnosis of back strain, and her lack of in-service treatment for residuals of the motor-vehicle accident after 1985 for the remainder of her service and the several other documented non-musculoskeletal causes of her back pain after the motor vehicle accident, the Board finds that there is insufficient evidence to support a finding of medical nexus.

The Board finds that the Veteran herself is not competent to offer an opinion as to the etiology of any current back disability because she is not shown to have the required medical training. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Board also finds that arthritis of the spine is not shown by the record to have manifested within one year following separation from service. Therefore, presumptive service connection is not warranted. 38 C.F.R. §§ 3.307, 3.309 (2015).

Accordingly, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for a low back disability. Therefore, the claim must be denied. 38 U.S.C.A. §§ 1101, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2015).

ORDER

Entitlement to service connection for a low back disability is denied.

REMAND

The Veteran claims service connection for sinus infections due to recurrent sinus issues during service and chest pain as due to urinary tract infections, heart murmur, and as secondary to service-connected major depressive disorder with anxiety and panic.

Consistent with VA's duty to assist, the Veteran was provided VA examinations for both the sinus infection claim and the chest pain claim. VA examinations in April 2012 and May 2014, with a supplemental opinion provided in February 2015 addressed the sinus infection claim. The April 2012 VA examination found that the Veteran did not have a sinus condition and provided a negative etiology on that basis. That opinion was provided on the basis that the Veteran did not have any sinus, nose, throat, larynx, or pharynx symptomatology, including chronic sinusitis or allergic rhinitis. This examiner also found that the Veteran did not currently have any sinus symptoms attributable to sinusitis, and had not had any episodes of sinusitis in the prior twelve months, and that X-rays were negative for chronic sinusitis or other sinus, nose, throat, larynx, or pharynx condition. However, this examination did not address the Veteran's post-service November 2006 diagnosis of chronic sinusitis by a VA physician or 2004 diagnosis of allergic rhinitis by Dr. D., a private physician, and was therefore incomplete. Although the May 2014 VA examiner acknowledged the 2004 allergic rhinitis diagnosed by Dr. D., it did not address the chronic sinusitis contained in the Veteran's November 2006 VA treatment records, and the February 2015 supplemental opinion only addressed the Veteran's diagnosis of allergic rhinitis. Accordingly, where the underlying rationale for the etiology is not fully informed, the examination is not complete for rating purposes and additional examination is required. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

As for the chest pain claim, although the Veteran raised the theory that her chest pain in service may have been caused by costochondritis, she has also raised several other theories including chest pain as secondary to heart murmur and palpitations or urinary tract infections in August 2006, and most recently as secondary to service-connected major depressive disorder with anxiety and panic in March 2014. However, the April 2012 VA examination provided an opinion only for costochondritis or other muscle conditions, not any heart conditions or palpitations, or urinary tract conditions. The Veteran was treated several times in service for urinary tract infections and chest pain, and there are electrocardiograph results from October 1988 finding sinus bradycardia and arrhythmia. Furthermore, the Veteran's VA treatment records indicate that she is currently diagnosed with chest pain not otherwise specified and that she has been treated for heart palpitations during the appeal period. At the time of the April 2012 examination, the Veteran had not yet asserted entitlement to service connection for chest pain secondary to major depressive disorder with anxiety and panic, so that theory of entitlement was not considered. Accordingly, as with the sinus infection claim, remand of the chest pain claim is required additional examination.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA examination with a medical doctor of sinusitis. The examiner must review the claims file and should note that review in the report. The examiner must take a detailed history from the Veteran. In addition to the other evidence of record, the Board calls the examiner's attention to a November 2006 VA treatment records indicating a diagnosis of chronic sinusitis, and a July 2007 VA treatment records discussing chronic sinusitis, which should be considered. The examiner should provide all findings, along with a complete rationale for any opinions. The examiner must provide opinions as to whether it is at least as likely as not (50 percent or greater probability) the Veteran's chronic sinusitis began during active service, or is related service, to include to any in-service medical treatment. If the Veteran is diagnosed with rhinitis, the examiner should opine whether it is at least as likely as not (50 percent or greater probability) that any rhinitis began during active service, or is related to service, to include to any in-service medical treatment or event.

2. Schedule the Veteran for a VA examination with a medical doctor of the claim for service connection for chest pain. The examiner must review the claims file and should note that review in the report. The examiner must take a detailed history from the Veteran. In addition to the other evidence of record, the Board calls the examiner's attention to the October 1988 EKG results indicating sinus bradycardia and arrhythmia in the service medical records. The examiner must provide opinions as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran has a heart murmur or other heart condition causing chest pain that began during active service, or is related to service or to any in-service medical treatment. The examiner must opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran's has a urinary tract infection condition causing chest pain that began during active service, or is related to service or to any in-service medical treatment. The examiner must opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran's chest pain is proximately due to or the result of, or aggravated by, service-connected major depressive disorder with anxiety and panic. The examiner should provide all findings, along with a complete rationale for any opinions.

3. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs