http://www.va.gov/vetapp16/Files4/1630492.txt

Citation Nr: 1630492 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 10-23 239 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi

THE ISSUES

1. Entitlement to service connection for numbness of the feet, secondary to service-connected degenerative arthritis of the lumbar spine. 

2. Entitlement to service connection for bilateral hearing loss.

3. Entitlement to service connection for tinnitus. 

REPRESENTATION

Appellant represented by: Mississippi State Veterans Affairs Board

ATTORNEY FOR THE BOARD

G. Jivens-McRae, Counsel

INTRODUCTION

The Veteran served on active duty from January 1965 to January 1968. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision of the Jackson, Mississippi, Department of Veterans Affairs (VA) Regional Office, which denied the issues on appeal. 

The issue of service connection for numbness of the feet, secondary to service connection for degenerative arthritis of the lumbar spine is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if additional action is required on his part. 

FINDINGS OF FACT

1. The competent and credible evidence of record fails to establish that the Veteran's diagnosed bilateral hearing loss had its onset in service, within one year of service discharge, or is otherwise related to his active service. 

2. The competent and credible evidence of record fails to establish that the Veteran's diagnosed tinnitus had its onset in service, within one year of service discharge, or is otherwise related to his active service. 

CONCLUSIONS OF LAW

1. Bilateral hearing loss was not incurred in or aggravated by active service, nor may sensorineural hearing loss be presumed to have been. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.385 (2015). 

2. Tinnitus was not incurred in or aggravated by active service, nor may it be presumed to have been. 38 U.S.C.A. §§ 1101, 1110,, 1112, 1113, 1131, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2015). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Before addressing the merits of the claims decided herein, the Board notes that VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 
38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2015). 

As to the claims on appeal, the notice requirements of the Veterans Claims Assistance Act of 2000 apply to all five elements of a service-connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

Neither the Veteran nor his representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009); Goodwin v. Peake, 22. Vet. App. 128 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). None is found by the Board. The VCAA duty to notify was satisfied by way of a letter sent April 2010. The letter fully addressed all notice elements. It informed him of what evidence was required to substantiate the claim and of his and VA's respective duties for obtaining evidence. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). With that letter, the RO effectively satisfied the notice requirements with respect to the issues of service connection on appeal. Under these circumstances, the Board finds that adequate notice was provided to the Veteran prior to the transfer and certification of his case to the Board. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as a statement of the case or supplemental statement of the case, is sufficient to cure a timing defect). 

VA also has a duty to assist a veteran in the development of the claim. This duty includes assisting him or her in the procurement of service treatment records, and other pertinent treatment records, and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2015). The RO associated the Veteran's service treatment records and VA medical records with the claims file. No outstanding evidence has been identified. 

The Veteran was also afforded VA examinations in connection with the claim. The Board finds the July 2010 and February 2016 VA examinations were obtained and the reports thereof associated with the claims file. The VA examination reports were thorough and adequate upon which to base a decision. The VA examiner personally interviewed and examined the Veteran, including eliciting a history from the Veteran, and provided the information necessary to decide the claims. 

The Veteran requested a videoconference hearing before the Board in his February 2011 substantive appeal. He withdrew his hearing request in April 2012. 

The Board concludes that all available records and medical evidence have been obtained in order to make an adequate determination as to the claims decided herein. Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Service Connection 

The Veteran asserts that service connection is warranted for bilateral hearing loss based on service incurrence. He maintains that he was on the rifle range in service and he was exposed to artillery. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303. Service connection may be established for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004) (citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002); Caluza v. Brown, 7 Vet. App. 498, 505 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (table)). 

Service connection may be established under the provisions of 38 C.F.R. § 3.303(b) when the evidence, regardless of its date, shows that a veteran had a chronic condition in service or during the applicable presumptive period. In addition, certain chronic diseases, including other organic diseases of the nervous system, such as sensorineural hearing loss and tinnitus, may be presumed to have been incurred or aggravated during service if they become disabling to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

In each case where a veteran is seeking service connection for any disability, due consideration shall be given to the places, types, and circumstances of such veteran's service as shown by such veteran's service record, the official history of each organization in which such veteran served, such veteran's treatment records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(a). 

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has rejected the view that competent medical evidence is required when the determinative issue in a claim for benefits involves either medical etiology or a medical diagnosis. Under 38 U.S.C.A. § 1154(a), lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d. 1313 (Fed. Cir. 2009); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). 

The ultimate credibility or weight to be accorded evidence must be determined as a question of fact. The Board determines whether (1) the weight of the evidence supports the claim, or (2) the weight of the "positive" evidence in favor of the claim is in relative balance with the weight of the "negative" evidence against the claim: the appellant prevails in either event. When the weight of the evidence is against the claim, the claim is denied. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. 

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

Service treatment records are devoid of findings, treatment, or diagnoses of bilateral hearing loss for VA purposes. There were no abnormal findings on enlisted or separation examinations. At his entrance examination in January 1965, he denied ear, nose or throat trouble. Audiometric examination findings in January 1965 (converted to the currently utilized ISO-ANSI standards) were:

HERTZ

500
1000
2000
3000
4000
RIGHT
20
5
5
5
15
LEFT
10
5
5
5
5

At the November 1967 separation examination, he denied ear, nose or throat trouble and hearing loss. His hearing was evaluated by the whisper examination showing 15/15. Thus, a hearing loss for VA purposes was not shown at any time during the Veteran's military service. 38 C.F.R. § 3.385.

The absence of in-service evidence of hearing loss is not fatal to a claim for service connection. Ledford v. Derwinski, 3. 87, 89 (1992). Evidence of a current hearing loss disability (i.e., one meeting the requirements of 38 C.F.R. § 3.385, as noted above) and a medically sound basis for attributing such disability to service may serve as a basis for a grant of service connection for hearing loss. Hensley v. Brown, 5. 155, 159 (1993). 

After service, the Veteran underwent a VA audiological consultation in July 2010. He reported decreased hearing for the past 25 or 30 years. There was no history of any noise exposure before the military and no recreational noise exposure. During service, he reported being on the rifle range and that he was exposed to artillery. He had occupational noise exposure which included working in factories for 7-8 years. Tinnitus was present 70-76 percent of the time and began many years ago. He was unable to be more specific regarding the onset. Puretone thresholds were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
35
45
55
70
75
LEFT
40
60
70
80
85

Speech recognition scores were 56 percent in the right ear and 67 percent in the left ear. The diagnosis was mild to severe bilateral sensorineural hearing loss (in the frequency range of 500-4000 Hz). The etiology of the tinnitus could not be determined without resorting to mere speculation. An audiological evaluation of January 1965 showed normal hearing in both ears; however, the audiological evaluation in November 1967 did not use puretones for hearing testing. As there was some history of occupational noise exposure, as he left the military in 1968 and there was no audiological data at discharge, the audiologist was unable to determine whether or not noise exposure in the military had any negative impact on his hearing without resorting to mere speculation. 

From October 2013 through August 2015, VA outpatient treatment records show that the Veteran was seen with hearing aid difficulties. Most of the period, he had broken hearing aids that failed and he was having his hearing aids repaired. 

The Veteran underwent a VA audiology examination in February 2016. Puretone thresholds were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
35
55
70
80
85
LEFT
45
65
80
75
85

Speech recognition scores were 65 percent in the right ear and 70 percent in the left ear. The diagnosis was bilateral sensorineural hearing loss (in the frequency range of 500-4000 Hz). The examiner opined that she could not determine a medical opinion regarding the etiology of the Veteran's right or left hearing loss without resorting to speculation. The Veteran had normal hearing on both enlistment and no puretones tested at separation. The Veteran answered "no" to the questions of hearing loss or ENT trouble on the Report of Medical History dated November 1967. The examiner stated that the rationale for the findings were the same as related during the July 2010 examination. As to tinnitus, the Veteran reported recurrent tinnitus. He indicated that tinnitus had been there "forever". 

As to the Veteran's hearing loss, there was no evidence of bilateral hearing loss in service, at service discharge, or within one year of service discharge. However, there is evidence of a present hearing loss (for VA purposes per 38 C.F.R. § 3.385), and therefore, the first element of Shedden has been established. The Board has also considered the Veteran's statements concerning in-service noise exposure. He did serve in the Army and he was an expert with the rifle. In giving due consideration to the places, types, and circumstances of his service, noise exposure is conceded. 38 U.S.C.A. § 1154(a). Accordingly, Shedden element (2) is satisfied. 

A finding of a nexus between the Veteran's current bilateral hearing loss and in-service noise exposure is still needed to satisfy Shedden element (3). In this case, there is no indication that noise exposure in service resulted in any hearing loss injury. The Veteran's service treatment records do not indicate any abnormalities with respect to his ears upon separation. The record is devoid of any competent medical evidence which even hints of an ear injury. Moreover, the whisper test completed in connection with separation from service reflected normal results of 15/15. 

The lack of disability or injury in service does not in itself preclude a grant of service connection. Indeed, service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. See 38 C.F.R. § 3.303(d). Nevertheless, a review of the post-service evidence does not support the conclusion that any current bilateral hearing loss is causally related to active service sufficient to establish service connection. 

The post-service evidence shows that at the 2010 VA examination, the Veteran complained of hearing loss for 25 to 30 years. However, even that would have been 12 years after service discharge. The 2010 VA examination also indicated that the Veteran did not have any recreational noise exposure but did have occupational noise exposure for 7-8 years while performing factory work. It was not set forth as to when this period of factory work was performed. As such, the objective evidence does not reflect continuity of symptomatology. 

In addition to the absence of documented post-service symptomatology related to his bilateral hearing loss for many decades, the evidence includes the Veteran's statements asserting continuity of symptoms with respect to his hearing loss since active duty service. The Board acknowledges that lay evidence concerning continuity of symptoms after service, if credible, is ultimately competent, regardless of the lack of contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir.1996) (table); Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). 

There is no dispute that the Veteran is competent to report symptoms of difficulty hearing because this requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6. 465, 470 (1994). When a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 at n.4 (Fed. Cir. 2007) ("Sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer."). In such cases, the Board is within its province to weigh that testimony and to make a credibility determination. 

Here, the Board finds that the Veteran's reported history of continued bilateral hearing loss since active service, while competent, is nonetheless not credible. When examined in July 2010, he related decreased hearing for the past 25-30 years. It is worth noting that at his November 1967 separation examination, he denied hearing loss and ear trouble. This information is at odds with the current assertions of hearing loss which began in service and has continued thereafter. The first statement weighs against the Veteran's credibility as it would have been in his best interest to report problems with hearing during service, if such had been the case. Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the claimant); Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care). 

Next, service connection may be granted when the evidence establishes a causal relationship between active duty service and current complaints. The weight of the competent evidence does not attribute the Veteran's bilateral hearing loss to active service, including in-service noise exposure. 

To that end, the Board places significant probative value on the July 2010 VA examination undertaken to specifically address the Veteran's bilateral hearing loss claim. The July 2010 VA examiner opined that the Veteran's bilateral hearing loss was less likely as not caused by or a result of his active service, to include military noise exposure. The VA examiner's negative opinion was based on the normal hearing in service and at service discharge. Also, there is no contemporaneous evidence of hearing loss complaints for more than 40 years after service discharge. 

The Board has also considered the Veteran's statements asserting a nexus between his currently-diagnosed bilateral hearing loss and his active duty service. The Federal Circuit held in Colantonio v. Shinseki, 606 F.3d 1378 (Fed. Cir. 2010) and in Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) that the Board errs when it suggests that lay evidence can never be sufficient to satisfy the requirement of 38 U.S.C.A. § 5103A(d)(2)(B) that there be a nexus between military service and a claimed condition. 

 Although the Veteran is competent to report that he has hearing problems, he is not competent to render a medical opinion as to the etiology of this claimed disorder. Such requires a level of medical expertise that he does not possess. The Board does not find the Veteran's statements concerning the etiology of his claimed bilateral hearing loss to be credible, as they are inconsistent with probative and objective medical evidence of record which concluded that his claimed bilateral hearing loss was not a result of events in service. Thus, the Board attaches greater probative weight to the clinical findings discussed above than to the Veteran's lay statements. As such, the preponderance of the evidence weighs against a finding that the Veteran's bilateral hearing loss developed in service, within one year of service discharge, or is due to any event or injury in service. 

The Board has considered whether presumptive service connection for a chronic disease is warranted. Service connection may be established under the provisions of 38 C.F.R. § 3.303(b) when the evidence, regardless of its date, shows that a veteran had a chronic condition in service or during the applicable presumptive period. Certain chronic diseases, including other organic diseases of the nervous system, such as sensorineural hearing loss, may be presumed to have been incurred or aggravated during service if they become disabling to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112; 
38 C.F.R. §§ 3.307, 3.309 (2015). As the evidence of record fails to establish any clinical manifestations of sensorineural hearing loss within the applicable time period, the criteria for presumptive service connection on the basis of a chronic disease have also not been satisfied. 

For the foregoing reasons, Shedden element 3 is not met as to a sufficient causal relationship between bilateral hearing loss and service and, therefore, the claim for service connection for bilateral hearing loss must be denied on a direct and presumptive basis. In arriving at the decision to deny the claim, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). As such, the claim for bilateral hearing loss is denied. 

The claim for service connection for tinnitus must also fail. 

In this case, there is no indication, other than the Veteran's own subjective statements, that noise exposure in service resulted in any tinnitus. Tinnitus is subjective and the type of condition to which lay testimony is competent to diagnose. Charles v. Principi, 16 Vet. App. 370, 374 (2002) (finding the veteran competent to testify to symptomatology capable of lay observation); See Layno v. Brown, 6 Vet. App. 465, 469 (1994). noting competent lay evidence requires facts perceived through the use of the five senses). 

Here, the Veteran's service treatment records do not indicate any abnormalities with respect to tinnitus upon separation. The record is devoid of any competent medical evidence which even hints of tinnitus in service. 

There is no dispute that the Veteran is competent to report symptoms of ringing in the ears (tinnitus) because this requires only personal knowledge as it comes to him through his senses. See Layno v. Brown. However, the Board finds that while the Veteran's history may be competent and credible, his history does not indicate the onset of tinnitus related to service. 

The evidence includes two VA medical examination reports, and those reports do not attribute his tinnitus to service and cannot ascertain the time of onset of his tinnitus. Moreover, the Veteran reported that he had tinnitus "forever." This is not sufficient to establish that tinnitus is associated with service, on either a direct or chronic disease presumptive basis. 

Based upon the Veteran's inability to identify the time of onset of his tinnitus and the absence of any medical evidence of record which does so, Shedden element 3 has not been met as to sufficient causal relationship between tinnitus and service and, therefore, the claim for service connection for tinnitus must be denied, to include on a chronic disease presumptive basis. 

In reaching the decision regarding service connection for tinnitus, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for tinnitus. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107. 

ORDER

Service connection for bilateral hearing loss is denied. 

Service connection for tinnitus is denied. 

REMAND

Additional development is necessary for the claim of service connection for numbness of the feet, secondary to degenerative arthritis of the lumbar spine. 

Service connection can be granted for a disability that is proximately due to or the result of by a service-connected disability. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995). When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310(a). 

Service connection can be granted for a disability that is aggravated by a service-connected disability. Compensation can be paid for any additional impairment resulting from the service-connected disability. 38 C.F.R. § 3.310; Id. Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease, will be service connected. 38 C.F.R. § 3.310(b). VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury." Id.

The Veteran underwent a peripheral nerves examination in February 2016. The examination was to determine if there was any neurological disorder affecting his feet which was caused or aggravated by his service-connected degenerative arthritis of the lumbar spine. The examiner opined, in pertinent part, that the Veteran's peripheral polyneuropathy was unrelated to the lumbar spine. He explained that MRI examination showed only foraminal encroachment at the L4-5 level on the right which would not give rise to his sensory findings. He did not, however, give a clear opinion as to whether the peripheral polyneuropathy was aggravated by the service-connected lumbar spine degenerative arthritis. As a result, the examination is not fully responsive to the questions posed.

Accordingly, the case is REMANDED for the following action:

1. The claims file should be returned to the physician who conducted the February 2016 peripheral nerves examination for an addendum opinion. If the February 2016 examiner is not available, the claims file should be forwarded to another suitably qualified examiner. 

The examiner should be asked to opine as to whether it is at least as likely as not (50 percent or greater probability) that the diagnosed peripheral polyneuropathy was aggravated (permanently worsened beyond natural progression) by the Veteran's service-connected degenerative arthritis of the lumbar spine. A complete rationale for the opinion must be set forth. If the examiner is unable to provide an opinion without resort to speculation, he/she should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he/she should comment on whether an opinion could not be provided because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion.

2. Thereafter, the AOJ should readjudicate the claim on appeal. If the benefit sought remains denied, the Veteran and his representative should be provided a supplemental statement of the case and given an opportunity to respond before the case is returned to the Board for further appellate review, if in order.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs